Merrimack, }
Dec. 1, 1914. }

### JAMES TAYLOR *v.* ELIZA C. THOMAS, *Ex'x.*

A deposition duly taken may be used by either party upon the trial, subject to the rules governing the admissibility of evidence.

The fact that a witness is unable to be present in court because of illness furnishes sufficient ground for the introduction of his deposition duly taken in the same cause.

Where the answer of a witness is responsive, its general admissibility is not challenged by the objection that it is irresponsive.

A person injured by collision with an automobile is not entitled to recover upon proof that the operator was disregarding the law of the road, but is required to show that such violation was the cause of the injury.

A verdict is not set aside on the ground that a statement of a rule of law in instructions was not sufficiently inclusive, when it is apparent from the whole charge that the jury were not misled thereby.

CASE, for negligence. Trial by jury and verdict for the defendant. Transferred from the April term, 1914, of the superior court by *Branch,* J., on the plaintiff's exceptions to the admission of evidence and to instructions to the jury.

The controversy is over responsibility for a collision between an automobile driven by the defendant's testator and a bicycle upon which the plaintiff was riding. Both vehicles were moving in the same direction upon a public street in Concord when the automobile overtook and struck the bicycle. Further facts appear in the opinion.

*Niles & Upton (Mr. Upton* orally), for the plaintiff.

*Martin & Howe (Mr. Howe* orally), for the defendant.

PEASLEE, J. The deposition of a witness had been taken in behalf of the plaintiff. The defendant showed that the witness was ill and unable to be present in court, and offered the deposition in evidence. The plaintiff excepted to the admission of the deposition because it was taken in his behalf and therefore could not be used as evidence except at his election. *George* v. *Fisk,* 32 N. H. 32, is relied upon to sustain this contention. Such a rule is there laid down (*pp.* 47, 48): "Until it was used, it was a piece of evidence belonging to the plaintiff, which he had taken, and over which the

defendant had no control.  .  .  .  He who takes the depositions uses them or not as he may please, and the other side has no right to them, nor will a court order them to be used or given up for the benefit of the other party."

The theory upon which that case was decided is clearly unsound. The decision is put upon the ground that the deposition was the property of the party who took it.  But as the law is now administered, there is no such thing as property in a piece of evidence.  It is now universally recognized that the object of a trial is to ascertain the truth by rational means.  The sporting theory—the theory that a judicial trial is a game to be played according to certain rules —has no more place in the present conception of the administration of justice than has the wager of battle.  The theory of the case is denied in *Carr* v. *Adams*, 70 N. H. 622.  In the latter case the taker of a deposition objected to filing the same when ordered to do so by the court upon motion of the adverse party, and relied upon the proposition that the deposition was his property and that so long as he did not elect to use it he could do with it as he pleased.  The decision that the court had power to make the order is wholly inconsistent with the theory of a property right in the evidence.

If the deposition was otherwise admissible, its use could not be prevented upon the theory that the evidence contained therein was the property of some particular party.  *Gordon* v. *Little*, 8 S. & R. 532.  The deposition came into existence by the exercise of the judicial power of the state.  Its taking was permitted to promote the discovery of the truth in the controversy between the parties. When so taken, it became, at common law, evidence to be used by either party under certain circumstances.  2 Wig. Ev., s. 1389.

While the power to take depositions is mainly of statutory origin, it is one which has often been conferred, and the nature and admissibility of depositions so taken has been discussed and decided as a common-law question.  "So far as the statute confers a judicial power to order the taking of a deposition, the power exists only so far as specified by the statute, because the power did not exist at common law.  But where a deposition has been lawfully taken— before a common-law judge in person, or before a master in chancery —the conditions on which it could be used in a common-law court were a simple question of the admissibility of evidence, and were constantly dealt with by the common-law courts, as the rulings in the foregoing sections indicate; hence the principles already established for this purpose at common law remain in force unless ex-

pressly changed by statute. Those principles have nothing to do with the lack of judicial power to initiate the taking of a deposition. It would be unfortunate if the patchwork legislation of the statutes on this subject should be thought to alter the already well established principles of the common law." 2 Wig. Ev., s. 1411.

At the common law, a deposition stands like the testimony of a witness at a former trial. "There is on principle not the slightest ground for failing to recognize all the dispensing circumstances as equally sufficient for both kinds of testimony." 2 Wig. Ev., s. 1401. It was formerly held in this state that testimony at a former trial could only be used after the death of the witness (*State* v. *Staples*, 47 N. H. 113), but this case was overruled. "This limitation of the rule is not well founded. The reasons for admitting this class of secondary evidence in the case of a deceased witness apply with equal force in the case of a witness mentally dead, or incapacitated by insanity, or loss of mind from any other cause." *Whittaker* v. *Marsh*, 62 N. H. 477, 478. The logic of this decision leads to the conclusion that such evidence should be admitted in any case where it is shown that the physical or mental presence of the witness cannot be had. In the present case it appeared that the witness was sick and unable to attend court. This was a sufficient foundation to permit the introduction of the less highly esteemed class of evidence; that is, her former testimony by way of deposition, upon the same subject and in the same cause.

Much stress has been laid upon the proposition that the statute which provides for the admission of depositions under certain circumstances (P. S., c. 225, s. 1) does not cover the present situation. Conceding that this is the correct interpretation of the statute, it by no means follows that the deposition may not be admissible independently of a statutory provision to that effect. The statute does not purport to exclude depositions in any event. No prohibitive language is used. "Presumably, the statutory enumeration will not be treated as intended to exclude other causes unenumerated; this ought to be the construction." 2 Wig. Ev., s. 1401. The provisions in the statute permitting the use of depositions under certain conditions are all plainly extensions of the common-law rule as to the admissibility of this class of evidence. They do not purport to limit its use.

In *George* v. *Fisk*, 32 N. H. 32, the deposition was taken under statutory provisions. The question presented was whether the deposition could be used in evidence by the party who did not take

it.   Whatever can be urged concerning the present statute, the one
then in force was entirely silent upon this subject.   The court
evidently so understood the situation; for the question was consid-
ered wholly from a common-law viewpoint, and the statute under
which the deposition was taken was not cited or referred to.   The
argument that the case should not be overruled because it places a
construction upon a statute which has been reënacted since the
decision was announced (*Parsons* v. *Durham,* 70 N. H. 44) is not
well founded.   The opinion is not an interpretation of the statute,
but the enunciation of a supposed rule of the common law.   The
question discussed is the common-law value of a deposition legally
taken.

The change in the statute introduced by the commissioners in
1867 (Comm'rs' Rep. G. S., c. 211, s. 1) merely enlarges the admis-
sibility.   Before that time a reason for the absence of the witness
was required.   Thereafter it was enough that he was not produced
in court.   This statute was not understood to limit the rule there-
tofore adopted: that regularly taken depositions were admissible
in evidence, not merely on the trial of the particular case provided
for by the statute, but also in any other case where the same matter
was in controversy between the same parties.   *Leviston* v. *French,*
45 N. H. 21; *Bundy* v. *Hyde,* 50 N. H. 116, 119.

The later statute (Laws 1885, c. 27), providing that the deposi-
tion of a party might be used by either party, was to that extent a
legislative repeal of the supposed rule of the common law as declared
in *George* v. *Fisk, supra,* that a deposition was the property of the
taker thereof.   Neither statute limits or purports to limit the
common-law attributes of a deposition as evidence.   "The statute
merely secures admissibility in certain instances, and is not intended
to forbid admission in other instances."   2 Wig. Ev., s. 1387.

It is also urged that the ruling here complained of deprived the
plaintiff of his right to cross-examine the witness.   Three safe-
guards for assuring the truthfulness of testimony, or detecting its
falsity, are generally recognized: the oath of the witness, his cross-
examination, his appearance when testifying.   The first is fully met
in the case of the deposition.   The second is substantially covered
by the examination had.   The principal object of cross-examination
is to supply the parts of the narrative favorable to the cross-examiner
which would naturally be omitted from the interrogation in chief.
Beyond this, it is nothing but the testing of a hostile witness.   If
a witness prove hostile, leave to cross-examine may be had by the

party producing him.   In like manner the examiner may, in taking a deposition, ask leading questions; and if he has laid such a foundation therefor as convinces the court, when the deposition is offered on the trial, that the witness was hostile, his cross-examination of his own witness will be admitted.   2 Wig. Ev., s. 1389; *Bundy* v. *Hyde*, 50 N. H. 116, 120.   Sufficient latitude is allowed in taking a deposition to make it certain that the deposition contains "all of the witness' knowledge that might be competent."   *Boston & Maine R. R.* v. *State*, 75 N. H. 513, 519.

The third safeguard—the appearance of the witness when testifying—is not essential to the admissibility of his testimony.   If the rule were otherwise, neither depositions nor testimony at a former trial could ever be used.   His unavailability may be a matter of necessity, or merely of inconvenience.   The authorities vary somewhat when the question is of the latter sort, but as to the former the rule appears to be uniform.   If the witness is merely absent, the impossibility of procuring his attendance will need to be shown with more or less strictness according to the view obtaining in the particular jurisdiction.   But where the witness is dead a case of absolute necessity is shown, and the testimony at a former trial or the deposition is everywhere admitted.   2 Wig. Ev., s. 1403, *et seq.*

The decision in *George* v. *Fisk*, 32 N. H. 32, has never been cited upon this question.   The case has been substantially overruled by the authorities herein referred to.   It is contrary both to sound reason and to the great weight of authority, and cannot now be followed.   There was no error in the ruling that the deposition could be used by the party who did not initiate the taking of it.

Objection was made to the answer to an interrogatory upon the ground that it was irresponsive.   The law is well settled that this objection is unavailing.   *Reagan* v. *Railway*, 72 N. H. 298.   The plaintiff now concedes that this is true, but insists that if the answer is both irresponsive and incompetent it should be excluded when objected to as irresponsive.   The rule is so stated in several cases, but in most of them there was a general objection to the answer, and in none of them was the exception based upon the single ground of irresponsiveness sustained.   *Glauber Mfg. Co.* v. *Voter*, 70 N. H. 332, 333, and cases cited.   Assuming, however, that the rule as stated is sound, and that the presiding justice should understand that when such a specific objection is made the question of the competency of the answer as evidence may be involved, the present exception cannot be sustained.

The question asked was: "How long after the wheel turned was it before the crash came?" The witness answered: "It struck him as quick as he turned. It seemed as though he went right in front of it. I should think he was not more than four or five feet away from the car. He could not have stopped the car, nor he could not have slowed down. He turned to the right and the car struck him." The plaintiff claims that the sentence "He could not have stopped," etc., is opinion evidence upon the question of how quickly the car could be stopped, and that it is incompetent because the witness knew nothing about operating a car. The fair construction of the language used is that it was merely a reiteration of other portions of the answer. Her meaning was that there was no time to do anything. But upon any construction the answer was responsive. The question was, how much time. The answer was, not time enough to stop or slow down the car. From this it follows that the question of the competency of the testimony under the opinion evidence rule is not presented. Conceding that an objection for irresponsiveness raises the question of the substantive admissibility of an irresponsive answer, no authority is claimed or found for the proposition that such objection goes beyond this in its scope. The answer being responsive, its general admissibility is not challenged by the objection that it is irresponsive.

Exceptions were also taken to the charge to the jury and to the refusal to give instructions which were requested. The first relates to a refusal to instruct that disobedience of the law of the road "raises a presumption that he was negligent." The request ignores the basic principle upon which the rule of reasonable conduct rests. "It is a rule of relation." *Garland* v. *Railroad,* 76 N. H. 556, 563. The fact of disobedience to the law may establish the party's guilt as between him and the state; but until the act infringes the rights of other individuals it is not a wrong as to them. It must be made to appear that the act complained of has some relation to them; otherwise the fact that a duty to the state was violated is immaterial. The individual must show not only the violation, but also that the violation was the cause of the wrong. This is a matter for proof rather than presumption. *Bresnehan* v. *Gove,* 71 N. H. 236; *Brember* v. *Jones,* 67 N. H. 374.

The rule is more correctly stated in the plaintiff's next request: "If you find that Mr. Thomas was disobeying the law of the road and that his disobedience of the law of the road caused the accident, those facts will justify a verdict for the plaintiff, if the plaintiff was

416 TAYLOR v. THOMAS. [77

in the exercise of due care." Although this instruction was not given in form, it was in substance. The jury were told that it was for them to say whether Thomas was violating the law of the road, and if so, what bearing such conduct had on the accident. This is the rule recognized as correct in the cases before cited and in the other cases therein referred to.

Complaint is also made that the charge limited the last clear chance doctrine to the case where the plaintiff was already in danger, when it should have included a situation when he was unconsciously going into danger. While the statement of the abstract rule as given may be open to this objection, yet the explanation of how it was to be applied by the jury makes it evident that both situations were fairly included. After laying down the general rule, the court continued: "That principle would apply to this case in two ways. First, could Thomas have stopped his car after Taylor turned in front of him and in time to avoid the accident? . . . Second, was there anything in the action or appearance of Taylor before the accident which indicated to the defendant, or ought to have indicated to him, that Taylor was oblivious to the danger or incapable of taking care of himself? If so, did Thomas act with due care in view of those circumstances? If he didn't, then the defendant would be liable, although the plaintiff may have been negligent in failing to learn of the danger. It is for you to say, gentlemen, whether this case presents facts which call for the application of these principles of law. Was there anything that Thomas could have done, after he discovered the danger, to avoid the accident?" If, as the plaintiff claims, it could have been found from the evidence that he turned and rode toward a place in the path of the automobile in manifest ignorance of the danger, and that Thomas ought to have appreciated the situation from the time the plaintiff changed his course, then, under the instructions, the jury could have found for the plaintiff because the plaintiff "was oblivious to the danger," and his action indicated, or ought to have indicated, such fact to Thomas. If there was such a situation, then it was one of danger from the time the plaintiff turned, and the charge on the last clear chance doctrine applied.

*Exceptions overruled.*

All concurred.