Grafton,  }
Oct. 4, 1921. }

### MYRTIE A. HYLAND, *Adm'x,* v. WALKER D. HINES, *Director General.*

P. S., c. 225, s. 1 does not limit the right to use the deposition of a witness to the party who takes it; but permits either party to use the deposition unless the other procures the attendance of the deponent at the trial.

The argument of counsel, "bear this in mind [the deceased] knew this rule . . . [referring to a rule of the defendant railroad] he must have known the rule . . . he had been working for the road five years," is warranted though there was no evidence that the deceased had a rule-book or that he had ever seen the rule.

CASE, for causing the death of plaintiff's intestate. Trial by jury and verdict for defendant. The deceased was working for the defendant in the Woodsville yard as a car inspector on the night of the accident, and either was, or had been, at work on two interstate trains, one of which was on track 1, the other on track 2. He

"cut the hose" of an express car on track 2 and there was evidence that he crossed over to track 3 (whereon he was killed) to uncouple the engine from the car.

This was the last time he was seen alive. There was evidence from which it could be found that after releasing the express car he crossed over to the heating plant on the east side of the yard and then started to go to the station which was on the west side of the yard and was struck by the express car on track 3. Part of the materials he used were kept in the heating plant and part in the station.

The defendant's employees who were working in the Woodsville yard when the accident happened were not in court when the case was tried, but the plaintiff had caused their depositions to be taken . and the court permitted the defendant to use them. The declaration contained two counts: one under the federal employers' liability act (35 U. S. Stat. 65); the other under the state statute (Laws 1911, *c.* 163, *s.* 1). The court ordered a nonsuit on the count based on *c.* 163, *s.* 1, and instructed the jury as to what the plaintiff must prove to recover under the federal act. Transferred by *Allen,* J., from the September term, 1920, of the superior court on the plaintiff's exception to these rulings and to remarks of defendant's counsel.

*Robert W. Upton* and *Joseph C. Donovan* (*Mr. Upton* orally), for the plaintiff.

*Jewett & Jewett* and *Alvin Burleigh* (*Mr. Theo S. Jewett* orally), for the defendant.

YOUNG, J. Public Statutes, *c.* 225, *s.* 1 provides that "The deposition of any witness in a civil cause may be taken and used at the trial unless the adverse party procures him to attend, so that he may be called to testify when the deposition is offered." If this language is to be given its ordinary meaning, either party may use the deposition unless the other party procures the attendance of the deponent at the trial, and there is nothing in the history of this section to rebut this conclusion.

The act of February 9, 1791, provides, "That in the trial of all civil causes, when witnesses in any such cause are bound to sea, are old and infirm, are sick and unable to appear at court, or live more than ten miles from the place of trial, their depositions may be taken by a justice of the peace." Laws, *ed.* 1805, *p.* 100. The act of February 9 was amended, (1) June 18, 1807; Laws, *ed.* 1815,

*p.* 114, (2) June 29, 1819; Laws, *ed.* 1824, *p.* 42, and (3) December 31, 1828; Laws, *ed.* 1830, *p.* 505. These amendments to the act of 1791 are not material to the question we are considering, for they merely prescribe the procedure to be followed in taking the deposition of a witness in a civil cause. Each of these amendments includes the previous legislation, and the act of 1828 was not materially changed in the revision of 1842 (R. S., *c.* 188, *ss.* 13–23); but *s.* 13, the section in which we are interested, was so amended in 1848 as to read, "The deposition of any witness in a civil cause may be taken and may be used upon the trial, if at the time of trial, the witness has deceased, is insane, is old and infirm, is sick or unable to attend the court, or lives out of the State or more than ten miles from the place of trial." Laws 1848, *c.* 704. There was no other change in this section until 1867 (C. S., *c.* 200, *s.* 13) when it assumed its present form. G. S., *c.* 210, *s.* 1; G. L., *c.* 229, *s.* 1; P. S., *c.* 225, *s.* 1.

There is, therefore, nothing in either the language of *s.* 1, or in its history, even to suggest that the legislature intended to limit the right to use a deposition to the party who takes it, for what it says and all it says is that the deposition of a witness in a civil cause may be used at the trial unless the adverse party procures him to attend so that he may be called as a witness when the deposition is offered. What is true of *s.* 1, in so far as the question we are considering is concerned, is true of its predecessors back to the act of 1791.

The fact some lawyers appear to think that a deposition is the property of the person who takes it has no tendency to rebut this conclusion, for their opinion is based on *George* v. *Fisk*, 32 N. H. 32, which was long since overruled. It is now held that a deposition is not property in the sense that it belongs to one of the parties, *Carr* v. *Adams*, 70 N. H. 622, but a part of the records of the cause. *Taylor* v. *Thomas*, 77 N. H. 410.

In short, the *Taylor* case holds that a trial is a serious attempt to discover the truth in respect to matters in dispute, and not a game of chance. If that is an accurate statement of the office of a trial or its purpose in the juridical scheme, what reason can be given for thinking the legislature intended to limit the use of a deposition to the party who causes it to be taken, even though the deponent is not in attendance at the trial? If that had been the legislature's intention, it is probable it would have used apt words to express it, for no valid reason for so limiting the use of a deposition has or can be given. But the legislature instead of using apt words to express

such an intention used words calculated to convey the idea that either party may use a deposition unless the other party procures the attendance of the deponent at the trial, for if the term "the adverse party" is to be given its ordinary meaning, by it is intended the other party to the action. In other words, there is no force in the plaintiff's contention that by "adverse party" as that term is used in P. S., c. 225, s. 1, is intended the same person as is intended by that term in s. 5, for what is intended and all that is intended by it in either section is the other party to the action. There is, however, force in her contention that the fact s. 11 provides in terms that either party may use the deposition of a party, tends to rebut the conclusion that the legislature understood that either party could use the deposition of a witness.

The history of s. 11, however, so far weakens the force of this inference that it is not sufficient to rebut the conclusion that when the legislature said the deposition of any witness in a civil cause may be taken and used at the trial unless the other party produces the deponent as a witness, it meant it.

The facts in respect to the history of that section are that in 1857 an act was passed which permitted witnesses who were interested in the event of the action to testify, and the next year an act was passed which provided that the deposition of a party, "may be taken and used in the same manner now by law provided for the deposition of witnesses in civil actions." This was changed in G. S., c. 209, s. 13, to, "no person shall be excused or excluded from testifying or giving his deposition in any civil cause by reason of his interest therein, as a party or otherwise," and appears without change in the General Laws (G. L., c. 228, s. 13); but was amended in 1885 by adding: "but whenever the deposition of the opposite party shall have been taken, it shall be put on file with the clerk of the court where the action in which it was taken is pending, within ten days from the conclusion of the taking thereof by the magistrate taking the same; and either party may use such deposition upon the trial of the cause in which it was taken, and if the party whose deposition has thus been taken shall use the same upon said trial, his rights as a witness on his own behalf shall not thereby be affected. No such deposition shall be taken after the expiration of the time limited by rule of court for the taking of depositions to be used on the trial of the cause." Laws 1885, c. 27. In the revision of 1891 this was so changed as to read, "Whenever the deposition of a party to an action has been taken, it shall, within ten days thereafter, be filed in the office of the

clerk of the court in which the action is pending. Either party may use the deposition upon the trial of the cause, unless the deponent is in attendance." P. S., c. 225, s. 11.

It is obvious that in the amendment of 1885 the office of the sentence, "either party may use such deposition upon the trial of the cause in which it was taken, and if the party whose deposition has thus been taken shall use the same upon said trial, his rights as a witness on his own behalf shall not thereby be affected," is not so much to make it certain that either party may use the deposition as to make it certain that if the party, whose deposition has been taken, uses it, he does not thereby lose his right to testify as a witness in his own behalf. The fact s. 11 limits the right to use the deposition of a party to cases in which the deponent is not in attendance on the trial tends to strengthen this conclusion.

The fact, therefore, s. 11 provides that either party may use the deposition of a party who is not in attendance when the deposition is offered, has little or no tendency to prove that the legislature did not intend to give both parties the right to use the deposition of a witness who is not in attendance at the trial of the action in which it is taken. In other words, it is probable that the legislature intended to give both of the parties to an action in which a deposition is taken an equal right to use it or to put depositions on the same footing as witnesses.

The plaintiff also says that the court erred when it ordered a nonsuit on the count based on Laws 1911, c. 163, s. 1, and says (1) that she could recover on that count under either subdivision (a) or (b); and (2) that it can be found the deceased was working on an intrastate train when he was killed.

It can serve no useful purpose to consider the plaintiff's first contention, for, as will appear later, it must be found that the deceased was working on an interstate train when the accident happened, if it is found that he was at that time doing anything that he was employed to do. It follows, therefore, that he must recover, if at all, under the federal act. *Shannon* v. *Railroad*, 77 N. H. 349.

The plaintiff relies on the testimony that it was the deceased's duty to heat the train which left Woodsville at 6 A. M., and to open and close angle cocks on steam and air hose, to sustain her contention that it can be found he was not engaged in interstate commerce when he was killed.

While it can be found that it was the deceased's duty to heat the morning train after it had been made up and placed on track 4,

there is no evidence from which it can be found either that that train had been made up at that time or that it was not an interstate train. While it may have been the deceased's duty to open and close angle cocks on the hose of intrastate trains, it cannot be found that that was what he was doing when he was killed, for, as the evidence is understood, the work of opening and closing these cocks is incident to making up and breaking up a train, and the only work of that kind, in so far as the evidence discloses, that was being done in the Woodsville yard at that time was on the train standing on track 1, and it is conceded that that was an interstate train. In short, while it may be found that the deceased had left his work and was wandering about the yard on an errand of his own when he was killed, if it is found that at that time he was doing what he was employed to do, it must also be found that he was working on, or in connection with, an interstate train — that is, that he was going for supplies to be used on one of the trains he was inspecting.

The defendant's counsel in closing, referring to a rule of the road, said: "Bear this in mind Mr. Hyland [the deceased] knew this rule. . . . He must have known the rule. . . . He had been working for the road five years." There was no evidence that the deceased had a rule-book, or that he had ever seen the rule, but the fact that he had worked for the road for five years was some evidence he knew the rules, and warranted the argument.

*Exceptions overruled.*

SNOW, J., did not sit: the others concurred.