**Roger A. FRECHETTE, etc., et al.,
Plaintiffs, Appellants,**

v.

**Joseph F. WELCH, Defendant, Appellee.**

**No. 79–1426.**

United States Court of Appeals,
First Circuit.

Argued March 10, 1980.

Decided May 6, 1980.

---

Harvey D. Carter, Jr., Bennington, Vt., with whom Witten & Carter, P.C., Bennington, Vt. and Barto & Gfroerer, Concord, N. H., were on brief, for plaintiffs, appellants.

Ernest L. Bell, III, Keene, N. H., with whom Theodore H. Parent, and Bell & Falk, Keene, N. H., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and WYZANSKI,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

In this diversity tort action, plaintiffs' major contention on appeal is that the district court committed reversible error by admitting into evidence two depositions where the conditions for their use, as set forth in Fed.R.Civ.P. 32(a), were not satisfied.

Plaintiffs were seriously injured when defendant's automobile crossed the center line of a highway and struck, head on, the car in which they were riding. Defendant's defense was that the loss of control over his vehicle was the result of a sudden, unexpected, and unforeseeable blackout and therefore he was not negligent. *Savard v. Randall*, 103 N.H. 234, 169 A.2d 276 (1961). At trial, the defendant sought to substantiate his blackout defense with the testimony of three physicians, Drs. Blacklow, Zuckerman, and Turner. The jury, accepting this defense, returned a verdict for defendant. The depositions admitted into evidence that form the basis for this appeal were those of Drs. Blacklow and Zuckerman.

Fed.R.Civ.P. 32(a)(3), stating when the deposition of a witness may be used at trial, reads as follows:

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoe-

---

* Of the District of Massachusetts, sitting by designation.

na; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

With respect to the videotape deposition of Dr. Zuckerman there was no exploration whether any of the conditions in Rule 32(a)(3) were met. Rather, in accordance with the apparently standard practice of the federal district court of New Hampshire, the court stated in a pre-trial order that the videotape deposition was admissible "as a matter of course." With respect to two other non-videotape depositions of Drs. Turner and Blacklow the court ruled, in the same pre-trial order, that defendant was "to make every attempt to have [the doctors'] testimony live," but in the event the doctors were not available their depositions could be used. At trial only Dr. Turner was present, and a different judge admitted, over plaintiffs' objection, the deposition of Dr. Blacklow, without requiring defendant to establish the existence of any of the Rule 32(a)(3) conditions.[1]

The defendant now argues (1) that plaintiff agreed to the use of the depositions, and (2) that defendant's use of the depositions is sanctioned by New Hampshire state law which, under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), should prevail in a federal diversity action.

■ We are unable to find that plaintiffs agreed to the use of the depositions in lieu of live witnesses. At the commencement of Dr. Zuckerman's videotape deposition, plaintiffs recorded their opposition to the use of the videotape as a substitute for Dr. Zuckerman's actual presence unless the strictures of Fed.R.Civ.P. 32(a)(3) were met. This objection was renewed in a pre-trial memorandum and was repeated at the trial. Plaintiffs similarly objected, on the basis of Rule 32, when defendant offered Dr. Blacklow's deposition. Defendant would now rely upon a stipulation which prefaces Dr. Blacklow's deposition providing,

"It is stipulated and agreed that the deposition . . . when transcribed, may be used for all purposes for which depositions are competent under the laws of the State of New Hampshire."

The Blacklow deposition, as evidenced by the caption on its title page, was taken in conjunction not only with the present action but also with the case of Ernest Record (the driver of another car involved in the accident) versus defendant which was filed in the New Hampshire Superior Court. The stipulation, then made, relating to the purposes for which the deposition could be used, is insufficiently explicit to constitute a waiver of plaintiffs' federal rights under Rule 32.

■ A New Hampshire State statute, 5 N.H.R.S.A. 517:1, allows a deposition to be used in lieu of live testimony unless the party objecting to the use of the deposition procures the attendance at trial of the deponent. The statute provides:

"The deposition of any witness in a civil cause may be taken and used at the trial, unless the adverse party procures him to attend so that he may be called to testify when the deposition is offered."

Unlike federal practice under Fed.R.Civ.P. 32(a)(3), New Hampshire practice does not restrict the substantive use of deposition testimony to only those instances where a witness is unavailable for a particular reason such as death, illness, or the like. *Tay-*

---

1. A colloquy directed to Rule 32(a)(3) preceded the admittance of Dr. Blacklow's deposition. The court took judicial notice that Dr. Blacklow's residence was within 100 miles of the court. Defense counsel then stated that he had been told, but had no firsthand knowledge, that Dr. Blacklow had just been through open heart surgery. Subsequent to the admission of Dr. Blacklow's deposition, defendant filed a statement from Dr. Blacklow mentioning two opera-

tions undergone six to seven months before trial. This was insufficient to establish that Dr. Blacklow was, at the time of trial, "unable to attend or testify because of . . . illness . . . ." Fed.R.Civ.P. 32(a)(3)(C). No exceptional circumstances within the meaning of Rule 32(a)(3)(E) were otherwise brought forward, and the court did not purport to rest its ruling on that basis.

*lor v. Thomas,* 77 N.H. 410, 413, 92 A. 740 (1940). In New Hampshire, a sufficient reason for the use of a deposition is the adverse party's failure to produce the deponent in court. *Id.,* 413, 92 A. 740.

Rule 32(a)(3), however, prevails over the conflicting New Hampshire practice. *Hosie v. Chicago & North Western Railway Co.,* 282 F.2d 639, 642 (7th Cir. 1960), *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961) (state statute regarding use of deposition inapplicable in diversity action). "When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court . . . can refuse [to apply the federal rule] only if . . . the Rule in question transgresses . . . the terms of the Enabling Act [or] constitutional restrictions." *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965); *see also Coady v. Aguadilla Terminal, Inc.,* 456 F.2d 677, 678 (1st Cir. 1972) (local rule contrary to federal rule cannot be applied); *Johnson Chemical Co. v. Condado Center, Inc.,* 453 F.2d 1044, 1046 (1st Cir. 1972) (same); *but see Marshall v. Mulrenin,* 508 F.2d 39 (1st Cir. 1974). No argument is made here that Rule 32(a)(3) violates either the Rules Enabling Act or the Constitution.

We therefore conclude that the district court erred in allowing defendant, over objection, to use the depositions of Drs. Zuckerman and Blacklow without an adequate showing that any of the conditions of Fed.R.Civ.P. 32(a)(3) were met. We further conclude, however, that the error was harmless, Fed.R.Civ.P. 61,[2] and does not warrant reversal or a new trial.

It is true that because Drs. Blacklow and Zuckerman did not testify in person, plaintiffs were unable to cross-examine them in light of the evidence as it evolved during the trial. The jury, moreover, had no chance to observe the demeanor of Dr. Blacklow and saw Dr. Zuckerman on videotape only. The question is whether these deficiencies were so prejudicial as to affect plaintiffs' substantial rights.

Plaintiffs contend that matters not raised at the time the depositions were taken were brought out for the first time at trial. Prejudice is said to stem from plaintiffs' inability to challenge the doctors' opinions through cross-examination in light of these matters. The purported new material pertains to the length of defendant's pre-accident memory lapse. Plaintiffs claim that it became apparent for the first time at trial that defendant had no memory of events seven to ten minutes prior to the accident, a somewhat longer period than may have been previously assumed. Plaintiffs claim that the opinions of all three of defendant's experts that defendant was unconscious at the time of the accident rested on the foundation that defendant had but a momentary loss of memory and that Dr. Turner, the one doctor to testify live at trial on defendant's behalf, changed his opinion when confronted with the longer lapse span. Plaintiffs are incorrect. First, the evidence does not establish with any precision the length of defendant's lack of recall prior to the accident[3] and second, the deponents' opin-

---

2. Fed.R.Civ.P. 61 provides

"Harmless Error. No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Technically, Rule 61 is applicable only to the federal district courts, but appellate courts act in accordance with its terms in reviewing trial errors. *Martin v. Travelers Indemnity Co.,* 450 F.2d 542, 555 (5th Cir. 1971); 7 Moore's Federal Practice ¶ 61.11 (2d ed. 1948).

3. At trial, Mr. Welch, 77 years old, acknowledged that he had erred in his deposition testimony when he specified his last recall before the accident to be noticing some tractor trailers at Dick's Auto Body. As it turned out, Dick's Auto Body is beyond the scene of the accident and thus defendant never reached it that day; rather his memory of the trailers probably stemmed from the day before when he had

ions are not founded upon the length of the pre-accident memory loss, whatever it is.

Dr. Turner, an internist at the hospital to which defendant was taken shortly after the accident, gave his opinion that defendant had suffered a transient ischemic attack (TIA)—a lack of blood supply and oxygenation to the brain which causes one to lose consciousness briefly—immediately prior to the accident. He enumerated a number of possible causes of a TIA such as fatty deposits working loose and plugging a vital artery of the brain, blood vessels going into spasm, or insufficient heart-pumping action, but did not specify what he believed to be the cause of defendant's TIA. Nor did he particularize the basis for his opinion that the defendant had lost consciousness prior to the accident other than to refer, in a general way, to defendant's memory lapse [4] and to the five-day evaluation conducted of defendant at the hospital. Dr. Turner did testify that if the elderly defendant had no recall of events ten or so minutes before the accident, then the most probable medical explanation for the lapse would be "a process of amnesia," but he did not depart from his opinion that defendant had blacked out just prior to the accident.[5]

Drs. Blacklow and Zuckerman, the deponents, went further than did Dr. Turner in purporting to explain why defendant was likely to have experienced a loss of consciousness. Their testimony was not concerned, however, with the length of defendant's pre-accident lack of recall. They stated that, based on tests conducted after the accident, defendant was diagnosed to have sick sinus syndrome or tachy-bradycardia syndrome, a condition in which the heart has episodes of very fast and very slow beating. During a slow episode, the blood supply to various parts of the body, including the brain, can so diminish that the person will suffer a lack of oxygen and faint. In order to regulate defendant's heartbeat so that a sufficient rate would be maintained, Dr. Zuckerman implanted a pacemaker. This operation took place approximately one month after the accident.

To the extent the length of defendant's pre-accident lack of recall can properly be described as a new matter, first brought out at the trial, we think it did not bear significantly upon the testimony of the doctors who testified by deposition. Their opinions were derived, as the jury would have understood, principally from firsthand observations of his condition made after the accident, leading them to conclude that he was prone to sudden blackouts.[6] The point that

---

travelled the same road. When he was questioned at trial what he did remember of the day of accident, he responded

". . . I decided I'd visit my brother. And I left Nelson . . . I went down through Dublin and Peterborough and Milford and onto 101 and turned on 101 to go over to Manchester."

From the defendant's inability to particularize his precise location immediately prior to the accident as indicated above, plaintiffs argue defendant's last memory is of driving along Route 101 in Milford, which is seven to ten minute's drive from the accident site on Route 101 in Bedford, and consequently defendant must have experienced a pre-accident memory loss of seven to ten minutes' duration.

4. Dr. Turner testified, "[I]f there was a memory lapse, we assume that the patient blacked out."

5. Dr. Turner was asked the following question by plaintiffs' counsel. "Could you and I agree, Doctor, if Mr. Welch had no memory from Milford until after the accident, that he didn't black out? Can we agree on that?" He re-

sponded, "No. You could also have a process of amnesia."

6. At various points, defendant, rather than asking the deponents to assume defendant had blacked out immediately prior to the accident and to explain, based on that assumption, the probable medical reason for defendant to have suffered a sudden loss of consciousness, instead asked the deponent doctors point blank why defendant had blacked out on the day of the accident. So phrased, the question assumed the existence of the principally contested matter—whether defendant had been conscious at the time of the collision. The question should not have been put in this manner. A question's implicit assertion as a fact of a disputed point potentially might cause a jury to lose sight of its responsibility to determine the existence of the fact. Here, however, we think the potential danger was sufficiently dissipated. It was obvious, and indeed Dr. Zuckerman so stated, that the doctors were not in the car with Mr. Welch and therefore did not know what really happened; rather, the deponent doctors were primarily explaining why defendant had

the duration of defendant's lack of memory was too long to be equated with a loss of consciousness may suggest that the memory loss alone did not establish a blackout, but does nothing to discredit the deponents' expert testimony showing a susceptibility to blackouts. Plaintiffs, moreover, were able to make their point concerning the span of the memory loss and the possibility of traumatic amnesia, in examining Dr. Turner. Dr. Turner, unlike deponents, had cared for defendant very soon after the accident and was better able than they to testify to such matters. Thus, while we think plaintiffs permissibly could have cross-examined Drs. Blacklow and Zuckerman, concerning defendant's lack of recall, we think it a remote possibility at best that such cross-examination could have affected the weight of their testimony. Moreover, even if a lengthy period of pre-accident memory loss is assumed, we think plaintiffs overstate the degree to which this factor undermines defendant's sudden loss of consciousness defense. Amnesia would not rule out a blackout, and the jury was still faced with finding the most likely explanation for defendant's unusual driving pattern which, in these circumstances, see infra p. 17, strongly suggested a loss of faculties.

Nor do we think the jury's inability to observe, firsthand, the demeanor of the deponent doctors prejudicial in the circumstances of this case. Where a witness's credibility is under attack, an opportunity to observe the witness in person might be considered an important aid in assessing veracity, and hence an erroneous ruling which precluded such observation might not be judged harmless. Here, however, the jury was not, to any substantial degree, faced with the task of determining the truth or falsity of the deponents' testimony or of choosing among sharply conflicting expert testimony. Drs. Blacklow and Zuckerman basically related defendant's condition as they observed and diagnosed it, and they provided a medical explanation why a person with tachy-bradycardia syndrome is prone to a sudden loss of consciousness. The diagnosis was primarily based on the result of holter cardiograms, a device which continuously monitored defendant's heart over two 24-hour periods. It was not claimed that the doctors misread the cardiograms, improperly diagnosed defendant, or inaccurately described the propensities of a person with sick sinus syndrome. To be sure, plaintiffs did try to suggest, by various means,[7] that defendant did not black out prior to the accident, but acceptance of plaintiffs' position was not tied to an attack upon Drs. Blacklow's and Zuckerman's credibility or expertise with respect to those matters they had personally witnessed. We conclude that the erroneous admission of the depositions does not constitute grounds for reversal and a new trial.

◼ Besides challenging admission of the depositions, plaintiffs also argue that there was insufficient evidence of loss of consciousness to support a verdict for defend-

---

medical cause to suddenly lose consciousness and why they believed he did so. Both parties, in their closing arguments, marshalled the evidence in support of their positions whether defendant was or was not conscious at the time of the accident. We think the jury adequately understood that they were to decide whether defendant had suddenly and unforeseeably blacked out and for that reason lost control of his car, or whether, instead, the accident resulted from some other factors for which defendant was accountable.

We do not accept plaintiffs' argument that the doctors' opinions that defendant blacked out due to tachy-bradycardia syndrome were inadmissible because they assumed facts not in evidence—that defendant was unconscious at the time of the accident. Contrary to plaintiffs' contention and as discussed infra, there was sufficient evidence from which the jury could conclude defendant did black out; hence, the questions were not based upon an assumption without support in the evidence.

7. For example, plaintiffs pointed out that ordinary cardiograms taken closer in time to the accident than were the holter cardiograms showed no episodes of slow heart rate, and plaintiffs' expert testified that an unconscious person would not have retained the upright position defendant was observed to occupy just prior to the collision. For that reason plaintiffs' expert concluded defendant was conscious at the time of the accident. Thus, while the experts disagreed, they did not facially contradict one another but rather focused on different factors in reaching their opinions.

ant, and that therefore the court erred in denying plaintiffs' Rule 50(b) motion. The evidence, in addition to defendant's propensity to blackout because of his sick sinus condition, was basically as follows. On a clear afternoon, defendant veered out of his lane, came across the two-lane highway in a straight course, sideswiped a car which, having sighted defendant, had pulled off the road up to the guard rail, bounced off that car, and struck plaintiffs' automobile head on. Despite a blast of the horn from the first vehicle, defendant took no evasive action such as braking or swerving. There were no brake marks from defendant's car even after its impact with the first vehicle, although the brakes, tested after the accident by the police, were in working order. Defendant has no memory of the collision and did not realize what had happened when aided from his car by a passenger in the first vehicle. On the other hand, the driver of the first car struck observed defendant to be in an upright position as he came across the highway, and plaintiffs' expert testified that had defendant, who was not wearing a seat belt, been unconscious he would have been slumped over and not visible to another driver. Additionally, there was conflicting evidence whether defendant could have been attempting to pass another car just prior to the collision and for that reason had crossed the center line. On this controverted record it was for the jury to conclude whether defendant had suffered a sudden, unforeseeable blackout and was therefore not negligent.

*Affirmed.*