MARK IV PROPERTIES, INC., a California Corporation, Plaintiff,

v.

CLUB DEVELOPMENT & MANAGEMENT CORPORATION, a California Corporation, et al., Defendants.

CLUB DEVELOPMENT & MANAGEMENT CORPORATION, a California Corporation, Counterclaimant,

v.

MARK IV PROPERTIES, INC., a California Corporation, et al., Counterdefendants.

Bankruptcy No. C81–0086–M.

United States Bankruptcy Court, S. D. California.

July 22, 1981.

---

Charles D. Christopher, Sullivan, Jones & Archer, San Diego, Cal., for C.D.M.C.

Jay Hartz/Gary S. Mobley, Weissburg & Aronson, Inc., Los Angeles, Cal., John J. Hargrove, Strauss, Kissane, Davis & Hargrove, San Diego, Cal., for Mark IV.

## MEMORANDUM OPINION ON THE ADMISSIBILITY OF DEPOSITION TESTIMONY AT TRIAL

JAMES W. MEYERS, Bankruptcy Judge.

### I

This controversy involves the admissibility of certain depositions as evidence in the trial of the above referenced counterclaim. The depositions in question were all videotaped and were also all reported by conventional stenographic means. The debtor and counterclaimant, Club Development & Management Corporation, sought to introduce videotaped versions of the deposition testimony at that trial over the objection of the plaintiff and counterdefendant, Mark IV Properties, Inc., ("Mark IV").

During trial, this Court determined that the depositions of certain banking officers and an attorney for Mark IV, who were nonparty witnesses, would be admitted into evidence and viewed by the Court in videotaped form. These videotaped depositions were supplemented with counterdesignations requested by Mark IV. The Court also determined that the videotaped versions of other depositions, involving party witnesses, would not be viewed. With respect to these deponents, the Court did allow the introduction of "videoscripts" which were prepared by the debtor to accompany its videotape presentation.[1] This opinion is filed to set forth the reasoning behind these decisions.

---

1. The videoscripts were simply edited versions of the conventional stenographic transcript.

## II

## FACTS

On January 26, 1981 Mark IV brought suit against the debtor seeking injunctive relief, damages and an accounting.[2] These claims for relief arose out of the performance of a joint venture agreement and sales agreement which Mark IV had entered into with the debtor. These agreements pertained to the operation of a resort in San Diego County, California, known as the Pala Mesa Resort ("the resort property"). The resort property consists of tennis courts, a championship rated golf course and a 135 room lodge with restaurant. The debtor and Mark IV had taken title to the resort property as tenants in common, each owning a 50% interest in the property. Mark IV had purchased its 50% interest in the resort property from the debtor for the sum of $3,422,500.00 on February 1, 1980.

After the filing of Mark IV's action, the debtor made application to this Court to sell its interest in the resort property, along with Mark IV's interest, to a third entity under Section 363(h) of the United States Bankruptcy Code ("Code"). 11 U.S.C. § 363(h). Mark IV then sought to block this maneuver by purchasing the resort property itself under Section 363(i) of the Code. 11 U.S.C. § 363(i). Mark IV's efforts were ultimately successful and this Court determined that Mark IV was entitled to buy the resort property under Section 363(i).

During the proceedings on the sale of the resort property, however, the debtor had asserted a counterclaim against Mark IV. The counterclaim sought recision of the joint venture and the sale agreements on a number of theories including fraud and mistake.[3] Since the resolution of the debtor's counterclaim would materially affect the sale to Mark IV if recision were granted, the Court determined that the counterclaim would be tried prior to concluding the sale to Mark IV.

The parties then commenced extensive pretrial discovery. The debtor sought to have all of its depositions videotaped by its own videotape expert. Over Mark IV's objection the Court granted this request, but required that an independent certified reporter also record the deposition testimony. The conventional transcripts were to be the official records of the depositions, which the debtor then used to prepare its videoscripts. The Court made it clear to the debtor's counsel, however, that permission to *use* the videotaped depositions and videoscripts at trial would be considered at that point in time. *See Hicks v. Roberts*, 89 F.R.D. 25, 26 n.2 (E.Tenn.1980).

Mark IV was represented by counsel at all of the depositions but apparently did not cross-examine any deponents. At trial the debtor sought to introduce edited versions of the videotaped depositions of several banking officers and of Mark IV's business attorney, Mr. Phillip Heckendorn. These individuals had been deposed in Los Angeles, California. The debtor had also prepared videoscripts from the official transcripts. Mark IV did not participate in the editing of any videotapes and objected to this, but the Court concluded that the videotapes were nonetheless admissible. Mark IV was allowed, however, to supplement the debtor's presentation with any material from the official transcripts or the debtor's videotapes.

Later in the trial, the debtor sought to utilize videotaped depositions of several of the officers of Mark IV. Mark IV also objected to this, and the Court refused to allow the introduction of these videotaped depositions. Ultimately counsel resolved the problem, however, when they agreed that the Court would read the debtor's videoscripts pertaining to these witnesses, and Mark IV would be allowed to supplement them with counterdesignations from the official transcript.

---

**2.** Mark IV filed an amended complaint on March 26, 1981.

**3.** The debtor filed an amended counterclaim on July 8, 1981 to conform their earlier pleading with the evidence produced at trial. *See* Fed.R. Civ.P. 15(b).

## III

## DISCUSSION

### A. *Admissibility of the Deposition Testimony at Trial*

#### 1. *Nonparty Witnesses*

The use of a deposition at trial, whether videotaped or otherwise, is governed by Rule 32 of the Federal Rules of Civil Procedure ("Federal Rules").[4] Rule 32 provides that a party may utilize the deposition of a nonparty witness at trial for any purpose, if the Court determines that any one of five enumerated conditions of "unavailability" have been met. Fed.R.Civ.P. 32(a)(3); *Frechette v. Welch*, 621 F.2d 11 (1st Cir.1980); 4A *Moore's Federal Practice* ¶ 32.05[1] at 32–24 (2d ed.) (only one of the conditions in Rule 32(a)(3) need exist) ("Moore's").[5]

▋ Here, the issue before the Court was whether the debtor's witnesses were "at a greater distance than 100 miles from the place of trial or hearing. . . . " Fed.R.Civ.P. 32(a)(3)(B). The debtor contended that this Court need only conclude that these witnesses were outside the 100 mile limit specified in Rule 32(a)(3)(B) to allow the use of their depostitions in trial. *Houser v. Snap-On Tools Corporation*, 202 F.Supp.181, 188–89 (Md.1962). Mark IV, however, urged the Court to deny the debtor use of the depositions. In doing so, Mark IV placed reliance on *G.E.J. Corporation v. Uranium Aire, Inc.*, 311 F.2d 749 (9th Cir.1962) (decided under a prior version of Rule 26(d)). Mark IV suggests that this decision requires the debtor to produce its nonparty witnesses to testify at trial. This Court does not agree with that strained analysis.

In *G.E.J. Corporation*, Uranium Aire had given G.E.J. an option to purchase Uranium Aire property. G.E.J. decided not to exercise the option, but refused to render performance to Uranium Aire as specified in the option. Uranium Aire then sued and obtained judgment against G.E.J. On appeal, G.E.J. argued, among other things, that the trial court had improperly excluded the deposition testimony of one, Gould. Mr. Gould had appeared previously in the trial as a witness called on behalf of Uranium Aire. In rejecting this contention, the Ninth Circuit stated that Gould's deposition could have been used by G.E.J. only if he was "unavailable", or, that its use was necessary because of "exceptional circumstances". *G.E.J. Corporation v. Uranium Aire, Inc., supra*, 311 F.2d at 754–55. The Court's use of the term "unavailable" in conjunction with former Rule 26(d) (now embodied in Rule 32(a)(3)), merely indicates their determination that once "unavailability" is shown *under that rule*, then the witnesses' deposition testimony can be used at trial. The Court in *G.E.J. Corporation* properly observed, however, that a nonparty witness who *does appear* at trial is surely not "unavailable" to testify.

In reaching this conclusion, regarding the admissibility of such depositions, the Court notes that Rule 804 of the Federal Rules of

---

4. Bankruptcy Rule 732 makes Rule 32 applicable to adversary proceedings in bankruptcy.

5. Rule 32(a)(3) provides:

    (a) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

    \*     \*     \*     \*     \*     \*

    (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Fed.R.Civ.P. 32(a)(3).

Evidence establishes a narrower definition of unavailability, but only in relation to certain exceptions to the hearsay rule. *See* Fed.R.Evid. 804(b)(1). Rule 32 of the Federal Rules, however, is itself an exception to the hearsay rule.[6] *See* Fed.R.Evid. 802, Advisory Committee Note; *Sunstrand Corporation v. Sun Chemical*, 553 F.2d 1033, 1051 n.38 (7th Cir.1977); 4 Louisell & Mueller, *Federal Evidence*, §§ 433, 487.

Also, this Court is not inclined to follow the suggestion found in *SCM Corp. v. Xerox Corp.*, 77 F.R.D. 16, 17 (Conn.1977) that a deposition not be admitted at trial under Rule 32(a)(3)(B) when it is shown that the deponent could have been served with a trial subpoena under Rule 45(e) of the Federal Rules during the proponent's case. 77 F.R.D. at 18.

As the Court in *SCM Corp.* points out, it is certainly desirable to harmonize the requirements of the Federal Rules of Civil Procedure. Here, however, this Court can find no basis for "harmonizing" Rule 45(e) with the requirements of Rule 32(a)(3). The fact that a witness can be subpoenaed to appear at trial under Rule 45 is no basis for excluding a deposition which is clearly admissible under Rule 32. Any discrepancy between earlier versions of Rule 45(e) and Rule 32 was evidently intentional in nature, and was envisioned by the draftsmen of the Federal Rules. *See* 4A *Moore's* ¶ 32.05[1] n.5; Comment, *The New Federal Deposition-Discovery Procedure*, 38 Columbia L.Rev. 1436, 1446 (1938). Additionally, the 1980 amendment to Rule 45(e), which has the effect of extending the range of service of a trial subpoena issued by federal courts in California far beyond the 100 mile limitation in Rule 32(a)(3)(B), does not signify a change in this intent.

This Court, rather, adopts the view set forth in *Houser v. Snap-On Tools Corporation, supra*. There, the Court concluded that under former Rule 26(d) the "mere absence of the deponent from the 100 mile area" was all that was needed to introduce a nonparty witness' deposition. The Court also observed that it was "doubtful that the Federal Rules require a party to subpoena a deponent to testify at trial. . . ." 202 F.Supp. at 189. This conclusion has not been changed by either Rule 32(a)(3)(B) or Rule 45(e) and therefore, the depositions of the debtor's nonparty witnesses are properly admitted at trial if the witnesses are unavailable under Rule 32(a)(3)(B).

■ Here the depositions of these nonparty witnesses would be admissible under Rule 32(a)(3)(B) if it could be shown that they resided and worked more than 100 miles from the place of trial. The burden of making this showing is on the party offering the deposition, the debtor. *See Matter of Transcontinental Energy*, 1 B.R. 460, 464 (Nev.1979). However, the proximity of these witnesses to the Court is to be determined when their depositions are offered into evidence and their testimony given at the deposition, under oath, can be used to make the necessary showing. *Hartman v. United States*, 538 F.2d 1336, 1345–46 (8th Cir.1976). These witnesses gave evidence that they worked and resided more than 100 miles from this courthouse and Mark IV presented no evidence to the contrary. Therefore, these witnesses were unavailable under Rule 32(a)(3)(B) and their depositions are admissible into evidence.[7] *See Houser v. Snap-On Tools Corporation, supra*, 202 F.Supp. at 188–89; *Frechette v. Welch, supra*, 621 F.2d at 12–14.

In reaching this decision this Court recognizes the positive result achieved. The wit-

---

6. Of course, under Rule 32(b), objections regarding the admissibility of any part of the deposition evidence may be made at trial on the same basis as if the witness were actually in attendance. 4A *Moore's*, ¶ 32.09 at 32–39.

7. The 100 mile limitation would be satisfied here, moreover, regardless of what approach was taken in its calculation. *Compare Colonial*

*Realty Corp. v. Brunswick Corp.*, 337 F.Supp. 546, 552 (S.N.Y.1971) (shortest railroad route from residence) *with SCM Corp. v. Xerox Corp.*, 76 F.R.D. 214, 216 (Conn.1977) ("as the crow flies"). *See also SCM Corp. v. Xerox Corp., supra*, 77 F.R.D. at 18 (distance measured from residence or regular place of employment).

nesses are all busy professionals who have already been subjected to lengthy interrogation when their depositions were taken in their home area. The debtor has concluded that their presence at the trial here in San Diego is unnecessary. Thus, further inconvenience to these witnesses is avoided. However, if Mark IV believes it is prejudiced in any way by this decision they can subpoena the witnesses to the trial and, even though not intending to call them, can abort the use of the depositions. *See* Comment, *The New Federal Deposition-Discovery Procedure, supra,* 38 Columbia L.Rev. at 1446; Fed.R.Civ.P. 45(e).

### 2. *Party Witnesses*

■ The debtor also sought to introduce depositions of certain officers of Mark IV who were present at trial. The debtor felt that the use of these depositions was a matter of right conferred by Rule 32(a)(2), and, that it would expedite the trial.

Rule 32(a)(2) of the Federal Rules allows the use of a party's deposition (or officers of a party) at trial by an adverse party for any purpose. *See* Fed.R.Civ.P. 32(a)(2). Under this rule, the deposition of a party can be used as part of an adversary's proof, regardless of that party's availability to testify at trial. *See e. g., Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 308 (5th Cir. 1978).

This does not mean, however, that the Court was obligated to utilize the debtor's depositions merely because they dealt with officers of a party to this litigation. Rule 32(a)(2) provides that the deposition of a party "may" be used by an adverse party. This Court could therefore exercise its discretion in deciding whether to allow the use of these depositions. *See Fenstermacher v. Philadelphia National Bank,* 493 F.2d 333, 338 (3rd Cir.1974).

Mark IV, moreover, did not question the Court's discretionary power under Rule 32(a)(2). Its quarrel with the admissibility of these party depositions was specifically directed at the *videotaped form* in which they were offered by the debtor.

### B. *The Admissibility of the Deposition Testimony in Videotaped Form*

Rule 30(b)(4) of the Federal Rules authorizes the use of non-stenographic means to record deposition testimony when certain precautions are taken to ensure that the testimony recorded will be accurate and trustworthy. Fed.R.Civ.P. 30(b)(4); *Kallen v. Nexus Corporation,* 54 F.R.D. 610, 612–13 (N.Ill.1972). Under this authority, the Court required that the debtor's depositions be stenographically reported as well as videotaped. *See In re Agent Orange Product Liability Litigation,* 28 Fed.R.Serv.2d 993, 996 (E.N.Y.1980). Having made the initial determination of trustworthiness under Rule 30(b)(4), the Court was left with considering Mark IV's objections under Rule 32 relating to the admissibility of the depositions in videotaped form.

The superiority of audio-visual devices over the stenographic transcript for use at trial is clear for:

> the ear of the tape recorder is as accurate as that of the court reporter and the combined audio and visual capability of a videotape machine surpass the written transcript when it comes to analysis of a witness.

*United States v. LaFatch,* 382 F.Supp. 630, 632 (N.Ohio 1974). *See also Continental Federal S. & L. Ass'n v. Delta Corp.,* 71 F.R.D. 697, 702(W.Okl.1976).

■ Generally, Mark IV was concerned with the debtor's use of edited videotapes which the debtor alone had prepared. Mark IV was also troubled by a denial of its cross-examination rights allegedly occasioned by the use of videotaped deposition testimony.

While these concerns are not without some force, they did not justify a rejection of the use of videotaped depositions. While the Court is mindful of the need for a fair editing process when dealing with videotaped depositions, and a mutual editing process would have been preferable here, Mark IV was in no danger of being prejudiced by the manner in which the videotapes were edited. The existence of con-

ventional transcripts of the examinations and videoscripts gave Mark IV the ability to generously supplement the record. *See* Fed.R.Civ.P. 32(a)(4). Furthermore, there is nothing to prohibit Mark IV from subpoenaing the nonparty witnesses to trial when presenting their own case. *See* Fed.R. Civ.P. 45(e).

Mark IV, additionally, had no reason to complain about the lack of cross-examination in connection with the use of these depositions. Mark IV was given full opportunity to cross-examine the debtor's witnesses *during* their depositions. Any harm resulting from Mark IV's decision not to cross-examine at that time, is due solely to Mark IV's own refusal to act. *See* Fed.R. Civ.P. 32(d)(3)(B) (waiver). Had Mark IV chosen to cross-examine, the Court would have been inclined to allow Mark IV the opportunity to augment the record with such testimony.

■ With respect to the videotaped depositions of Mark IV's officers, the Court concluded that the use of these videotapes would only have complicated matters further and would not have expedited the trial. What the debtor had termed "edited" videotapes of the party witnesses actually amounted to seventeen hours of videotape. This Court simply did not have the time on its busy trial calender to view those videotapes in their entirety. Additionally, the situation with these witnesses was quite different than that of the nonparty witnesses. The Court was unfamiliar with the demeanor and general credibility of the banking executives and Mark IV's attorney. The party witnesses though, were officers of Mark IV who were already known to this Court. Their credibility and demeanor had been previously established in the testimony they gave before this Court in various pre-trial proceedings which have been designated as part of the record of this trial. Further, this Court is able to read the official stenographic transcript outside of regular court hours, thereby expediting this trial.

Given the discretion inherent in Rule 32(a)(2), the Court's familiarity with the debtor's party witnesses and the time con-

straints in this case, the debtor's videotaped deposition of Mark IV's officers were excluded. In any event, the matter was reasonably concluded when the Court reviewed the debtor's videoscripts for these witnesses, and offered Mark IV the opportunity to submit counterdesignations from the official record.

## IV

### CONCLUSION

The edited videotapes of the depositions of the debtor's nonparty witnesses are admitted under Rule 32(a)(3)(B). The depositions of the debtor's party witnesses, presented in their videotape format, are excluded in light of the discretion vested in this Court, however, the edited videoscripts of the depositions of officers of Mark IV are received under Rule 32(a)(2).