The State on relation of Paula Williams, the mother of a child born on July 24, 1984, commenced this action against Tommy Clark (defendant) in order that it might be judicially determined whether or not he is the child's father.
The mother's last menstrual period occurred on October 9, 1983. According to the mother, she and the defendant were sexually intimate for about one and one-half years, starting around May 1, 1982, and ending in November 1983. She stated that during October and November 1983 neither of them used any type of birth control in their sexual relationship. On the other hand, the defendant testified that their association ceased in May 1983. Laboratory tests which were performed upon the blood samples of the mother, the child, and the defendant resulted in a cumulative probability of 98.8% that the defendant is the father of the child.
After a jury trial the verdict was that the defendant is the child's father, and the trial court entered a judgment to that effect. *Page 1308 
The defendant's motion for a new trial was overruled by the trial court, and the defendant appealed. He raises six issues through able counsel.
 I
The defendant first argues that the trial court erred in failing to grant one or more of his motions for a mistrial, for a continuance, or for a new trial. Those motions were founded upon the mother's testimony that on October 23, 1983, she had engaged in one act of sexual intercourse with Jim Neal and that, while she had confessed that fact to the defendant on that same day, she had not disclosed to the defendant the identity of the person with whom her indiscretion had occurred. She swore that she also had sex with the defendant on October 23, 1983. The defendant testified that the mother advised him of her indiscretion without identifying the man involved, and it appears from the defendant's motion for a new trial that neither the defendant nor the State was aware of that indiscretion with Mr. Neal until her trial testimony. The defendant never attempted by any discovery method to ascertain the name of the man with whom she had sexual relations on October 23, 1983.
The defendant argues that Jim Neal should have been made a party defendant under § 26-17-13(c), Ala. Code (1975) (1986 Repl.Vol.), his motions for a new trial and for a continuance being made in order to add Mr. Neal as a party.
This is a civil action, and it is governed by the Alabama Rules of Civil Procedure. Ala. Code (1975), § 26-17-9(a) (1986 Repl.Vol.). No crime is defined or established by the Uniform Parentage Act. Actions brought under that Act are not quasi-criminal in nature.
Trial courts are vested with wide discretion in ruling upon motions for a mistrial, General Financial Corp. v. Smith,505 So.2d 1045 (Ala. 1987), motions for a continuance, CohuttaMills, Inc. v. Dover Carpets, 507 So.2d 1329 (Ala.Civ.App. 1987), and motions for new trials, Groenendyke v. Groenendyke,491 So.2d 959 (Ala.Civ.App. 1986), and the trial court's denial of such motions may not be reversed unless the trial court palpably abused its discretion.
Jim Neal's identity could have been ascertained by the defendant through civil discovery methods before the trial, but he did not do so. Accordingly, the trial court could have found that due diligence was not used to gain that information.Groenendyke, 491 So.2d at 962. We find no palpable abuse of discretion in the rulings of the trial court.
 II
The defendant contends that the chain of custody of blood samples was not established by the evidence. We have carefully considered the extensive testimony which was presented upon this issue. The defendant stipulated that the blood tests were performed upon the three samples which were received by the laboratory. There was testimony, in effect, that the Birmingham laboratory received the samples of blood of the mother, child, and defendant which had been shipped from Russellville. In short, the chain of identification as required by Lyle v. Eddy,481 So.2d 395 (Ala.Civ.App. 1985), was sufficiently established.
 III
The State offered the deposition of an absent witness, Dr. Barger, who was not a physician, but was a Ph.D. in charge of the laboratory that conducted the blood tests at the University of Alabama at Birmingham School of Medicine. Both parties had participated in the taking of that deposition. The defendant's objection was that the witness was not over 100 miles away, the latest bar telephone book indicating that the mileage from Russellville, where the trial was being held, to Birmingham is 98 miles. The State's trial attorney stated that the absent witness had indicated to him that he would not be present at this trial, and the State's attorney represented to the trial court that the witness was over 100 miles away. *Page 1309 
Rule 32(a)(3)(B) of the Alabama Rules of Civil Procedure provides that the deposition of a witness, whether or not a party, may be used by any party for any purpose if the trial court ascertains that the witness is at a greater distance than 100 miles from the place of the trial. Where a deposition is sought to be introduced on account of one of the conditions as set forth in Rule 32(a)(3), the 100-mile rule being one such condition, it is up to the trial court to determine whether such condition exists. Pugh v. State Farm Fire Casualty Co.,474 So.2d 629 (Ala. 1985); Cunningham v. Lowery, 45 Ala. App. 700, 236 So.2d 709 (Ala.Civ.App.), cert. denied, 286 Ala. 734, 236 So.2d 718 (1970); 8 C. Wright and A. Miller, FederalPractice and Procedure § 2146 at 458 (1970).
If two witnesses are present at different locations in Birmingham, one of them could be a number of miles farther from the Franklin County Courthouse than the other. The trial court could have exercised its discretion in determining that the absent witness was more than 100 miles from the place of the trial. We find no error here.
 IV
After the State rested its case, the defendant requested, and the trial court denied, the issuance of an attachment for an absent witness who had been subpoenaed by him. It had been reported to the defendant's attorney that the witness did not intend to attend court. The defendant desired to prove that the mother telephoned the witness from the hospital immediately after giving birth to this child to announce the child's birth to the witness.
Attachments of absent subpoenaed witnesses are still authorized in criminal cases by § 12-21-182 of the Alabama Code, but, as to civil cases, that code section is superseded by Rule 45(f), A.R.Civ.P., which adopted the federal rule that authorizes contempt proceedings for the failure of a person to obey a subpoena served upon him.
Even if attachment is still an authorized remedy in a civil action, we cannot say that the trial court erred or abused its discretion in refusing to issue an attachment for the witness inasmuch as the trial court was not apprised that the witness had not responded to the subpoena until after the State had rested its case, that portion of the trial consuming 143 pages of testimony. Lyons v. Lyons, 279 Ala. 329, 185 So.2d 121
(1966).
 V
Just before the trial commenced, the State filed a motionin limine, which was orally amended. It sought to prohibit the defendant from offering or arguing any evidence of sexual contacts of the mother which occurred more than 300 days before the birth of the child and to further prohibit the defendant from offering or arguing any evidence concerning any other children born to the mother or concerning any other court proceedings whereby the mother sought to establish the paternity of any of her other children. The trial court granted the motion. The only aspect of the order in limine which the defendant presently challenges is the portion thereof concerning the mother's involvement in other paternity proceedings.
The defendant argues that the ruling concerning the motionin limine should have been rendered at an earlier date or that the trial court should have continued the case in order to permit the defendant to appeal the questioned portion of the order. We disagree. In Howlett v. State, 456 So.2d 324
(Ala.Civ.App. 1984), the motion in limine was filed immediately before trial, and it was granted by the trial court. The jury found in the defendant's favor, but the trial court set the verdict aside and granted the State's motion for a new trial based upon violations by the defendant's attorney of the trial court's in limine ruling. From a practical standpoint, our affirmance of the granting of the motion for a new trial impliedly approved the granting of the State's motion inlimine. The Howlett motion in limine and the motion in the present case are strikingly similar. We *Page 1310 
approve the granting of the motion in limine in the present case.
 VI
The defendant's last issue concerns the sufficiency of the evidence to authorize the verdict of the jury and the ensuing final judgment in view of the mother's admission to having had sexual intercourse with Jim Neal on October 23, 1983, and the child's birth on July 24, 1984. She testified that she also had sexual relations with the defendant on October 23, 1983. The blood tests resulted in a 98.8% probability that the defendant is the father of the child. Without any attempt to summarize the evidence, we conclude that the State's evidence adequately supported the jury's verdict and the judgment thereon.
The final judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama of 1975 and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.