MADDOX, Justice.
This appeal presents the question whether the trial court abused its discretion in allowing a party to introduce into evidence, under the provision of Rule 32(a)(3), Ala.R. Civ.P., the deposition testimony of a witness who was also a counterclaim defendant.
Tyrone R. Washington and Wesley Neal Simmons, an employee of appellee Massey Business Products, Inc., were involved in an automobile collision at an intersection in Birmingham, Alabama. Washington and Simmons each claimed that the traffic light in his direction was green.
Massey Business Products, Inc. (“Massey”), and its driver, Simmons, sued Washington because of property damage and personal injury allegedly caused by the accident. Washington and his wife, Kim, who was a passenger in his car at the time of the accident, counterclaimed, alleging that as a result of negligence on the part of Massey and Simmons they had suffered property damage and personal injuries. On the day of trial, Simmons was dismissed as a plaintiff, allegedly because he had moved to Texas and did not intend to prosecute his suit. Simmons remained as a defendant in the counter action, however.
During the trial, Massey sought to introduce Simmons’s pretrial deposition, under the provisions of Rule 32(a)(3)(B), on the ground that Simmons was in Texas and therefore was not available to testify. The Washingtons objected, contending that, on the day before trial, Simmons had been served in Trussville with a subpoena by a constable duly authorized to do so.
The trial court initially sustained the Washingtons’ objection, but gave Massey an opportunity to locate Simmons. The next day, Massey reported that it was unable to locate him. At that time, the trial judge permitted Simmons’s deposition to be read into evidence.[1]
The jury returned a verdict against Massey on its complaint and against the Wash-ingtons on their counterclaim. The jury, in effect, either found that neither of the drivers was guilty of negligence or that each was guilty of contributory negligence.[2] Washington filed a post-trial motion in which he claimed that the trial judge had erred by permitting Simmons’s deposition to be read into evidence. This motion was deemed denied when the trial judge did not rule on it within 90 days. Rule 59.1, Ala.R. Civ.P.
*183 The Washingtons contend that the trial court abused its discretion in allowing the deposition to be read into evidence. Rule 32(a)(3) provides that “[t]he deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the state.” When a party seeks to introduce a deposition under any of the conditions set out in Rule 32(a)(3), it is up to the trial court to determine if that condition exists. Clark v. State ex rel. Williams, 527 So.2d 1306 (Ala.Civ.App.1988), overruled on other grounds, citing Pugh v. State Farm Fire & Casualty Co., 474 So.2d 629 (Ala.1985).
The Washingtons assert that, under current case law, a trial court may exercise discretion in allowing a deposition into evidence under the provisions of Rule 32(a)(3) only if no controverting evidence is offered as to the availability of the deponent. This court held in Pugh v. State Farm Fire & Cas. Co., 474 So.2d 629 (Ala.1985), that where no controverting evidence is presented, there is no error in admitting the deposition testimony. In so holding, this Court cited the Alabama Court of Civil Appeals ruling in Cunningham v. Lowery, 45 Ala.App. 700, 236 So.2d 709 (Ala.Civ. App.), cert, denied, 286 Ala. 734, 236 So.2d 718 (1970). That court ruled that, absent any controverting evidence, it was not error to admit a deposition into evidence, but that, rather, it was in the judge’s discretion to determine if it should be admitted.
In this case, the Washingtons presented some controverting evidence— evidence that a constable had served Simmons with a subpoena in Trussville on the day before trial — but our review of the record shows that the trial court was authorized to find that the service of this subpoena was made on someone other than Simmons.[3] This evidence was called to the attention of the judge before the deposition was allowed into evidence. Absent any evidence on behalf of the offering party to show that the missing party was really out of state or more than 100 miles from the place of the trial, this evidence would bar the admission of the'deposition under A.R. Civ.P. 32(a)(3)(B). However, this Court is not satisfied that the trial court allowed the deposition into evidence under Rule 32(a)(3)(B). Rather, it would appear that the trial court considered both Rule 32(a)(3)(E) and Rule 32(a)(3)(F) in determining to allow the deposition into evidence.
The record shows that when the Wash-ingtons informed the court that they had had a process server actually serve Simmons with a subpoena, controverting evidence was brought to the attention of the trial court; that the judge ordered a court recess in order for the appellees to try and locate the witness; and that Massey did procure subpoenas and did try to find the witness, but was unable to locate him for service.[4] When court reconvened, the trial *184 judge was faced with a dilemma. He was unable to determine if the witness was out of the state or more than 100 miles from the place of the trial. Massey then moved to enter the deposition into evidence under A.R.Civ.P. 32(a)(3)(E), which provides that “the deposition of a witness, whether or not a party, may be used for any purpose if the court finds: ... that the party offering the deposition has been unable to procure the attendance of the witness by subpoena.” In the time afforded it, Massey did try to find Simmons in order to serve him with a subpoena. However, Massey could not find him.
Based on the facts in this record, we cannot hold that the trial court erred in admitting Simmons’s deposition into evidence. A review of the record indicates that the judge allowed the deposition into evidence under the provision of Rule 32(a)(3)(F), which provides, in part, that “the deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.” The trial judge stated, before he ruled on the admissibility of the deposition, that “[i]t all came up so late, that the only alternative I have, as far as I’m concerned, in fairness, [to] letting him use the deposition is just to kill this whole thing and let you crank up at a later date. I don’t want to do that, so I’m going to let you use the deposition.”
Rule 32(a)(3)(F) is identical to Fed.R. Civ.P. 32(a)(3)(E), and this Court has said that in determining the purpose and effect of Alabama’s rules of procedure federal cases can be examined. See Century Plaza Co. v. Hibbett Sporting Goods, Inc., 382 So.2d 7 (Ala.1980), in which this Court said that it has adhered to the decisions of the federal courts construing Rule 32. In Allgeier v. United States, 909 F.2d 869 (6th Cir.1990), the United States Court of Appeals for the Sixth Circuit ruled that “exceptional circumstances” are governed by the companion provisions in Rule 32. Both the Federal rules and the Alabama rules authorize the use of a deposition in lieu of live testimony only when the witness is shown to be unavailable or unable to testify because he is dead, at a great distance, aged, ill, infirm, imprisoned, or not procurable through a subpoena. Allgeier further held that the decision as to whether to allow the use of a deposition at trial under Fed.R.Civ.P. 32(a)(3)(E) is within the sound discretion of the trial court, and that the decision would not be overturned unless it was shown that the trial court had clearly abused its discretion.
In this ease, even though the record does not show positively that the witness was out of state, the record strongly suggests that the subpoena issued by the Washing-tons was served on someone other than Simmons. In any event, Simmons could not be found by Massey, even though the record shows that Massey attempted to have him served. We believe that these are such exceptional circumstances that the trial court could permit the use of Sim *185 mons’s deposition. As the trial judge pointed out, the disallowance of the deposition testimony would have meant that the trial would have been delayed, with added expense.
The Washingtons had a full opportunity to cross-examine the witness at the deposition hearing, and the trial judge obviously was sensitive to their rights and did not permit the deposition to be used until he determined that it was in the interest of justice to do so. In view of these facts, we can not say that the trial judge abused his discretion. See Huff v. Marine Tank Testing Corp., 631 F.2d 1140 (4th Cir.1980), and Frechette v. Welch, 621 F.2d 11 (1st Cir.1980). We, therefore, affirm.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.

. The record, in part, shows the following:
"THE COURT: I’ll let you use the deposition, I’ll just say that. I have no idea what the circumstances are. I have no idea whether the guy is really here or really not.
"MR. WILLIAMS [Plaintiffs attorney]: I don’t either, Your Honor.
"THE COURT: And I don't doubt that anything has been told you, but I have no way of verifying independently. It all came up so late, that the only alternative I have, as far as I’m concerned, in fairness, [to] letting him use the deposition is just to kill this whole thing and let you crank up at a later date. I don’t want to do that, so I’m going to let you use the deposition.”

. The verdict actually read: "We, the Jury, find in favor of the defendant on the plaintiffs claim and further find in favor of the plaintiff on the defendant’s claim; it being our verdict that neither recover against the other.”

. After the trial court called a recess in order for Massey to try to locate Simmons, the Wash-ingtons sent their server to try to locate Simmons, also. The process server returned to the address at which he said he had served Simmons. This time the man there identified himself as “Glen,” Simmons’s roommate. The server testified in court that the same man had identified himself both as Simmons and as someone named Glen.

. The following appears in Massey’s brief, and we find this statement of the facts to be consistent with the record:
"Washington objected to Massey’s use of Simmons’ testimony on the basis that no efforts were made to procure the attendance of Simmons (R. 56-57). The trial court heard from a 'special constable’ retained by the Washingtons, who said that he served a subpoena on Simmons on November 13, 1989, at 207 Trailer Park in Trussville (R. 52-53). In light of this statement by plaintiffs investigator, Tatum, the trial court said that either party could attach Simmons (R. 56, 58, 77, 80, 94).
"The trial court acknowledged that Massey’s counsel was caught by surprise (R. 70, 85). The trial court allowed counsel for Massey time to try and find and subpoena Simmons and the trial adjourned until 9:00 a.m. the next morning (R. 70, 82). After being confronted with this new allegation, which differed markedly from the prior representation of Simmons, counsel for Massey had the clerk issue subpoenas (R. 83). Attorney Paul Soth-erland from his firm attempted to serve the subpoenas on Simmons both at his parents’ home in Pinson and at 207 Trailer Park (R. 83). Counsel for Massey was unable to locate Simmons to serve him with a subpoena (R. 83).
[footnote continued]
*184 "During the break in the trial, counsel for Massey spoke to Simmons’ mother in Pinson (R. 83). She said that a friend of Simmons lived at the trailer park and provided his name, Curtis Tucker, and phone number (R. 84). Counsel for Massey spoke to Mr. Tucker who said that he had not seen Simmons in several weeks and it was himself that had been served with the subpoena intended for Simmons (R. 84). Massey’s counsel asked Mr. Tucker to appear in court but he failed to do so (R. 84). Mr. Tatum, the investigator for Washington, testified that he returned to the trailer and the person who previously identified himself as Simmons identified himself by another name (R. 89). Another person at the trailer told Tatum that Simmons had returned to Texas and that he had explained this to Massey’s counsel (R. 90). Tatum did not ask for any driver’s license or identification of the person suspected to be Simmons (R. 90).
"The trial court understood that Simmons’ testimony was essential to Massey’s case and said the court would do what appeared to be fair (R. 69-70). Counsel for Massey was reluctant to attach Simmons and the trial court understood that it is not a desirable thing to do (R. 70). Indeed, the trial court knew of only one instance in which a witness was attached and the trial court said the courts are reluctant to issue attachments (R. 71).”