[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 290 
Kenneth E. Kilgore sued his former employer, Beaulieu of America, Inc., alleging that his employment had been terminated in retaliation for his having filed a workmen's compensation claim. A jury returned a verdict in favor of Kilgore and awarded him $65,179. The trial court entered a judgment in that amount for Kilgore. Beaulieu appealed to the Alabama Supreme Court, which deflected the case to this court pursuant to §12-2-7(6), Ala. Code 1975.
The evidence adduced at trial tended to show the following: Kilgore applied for a job at Beaulieu in March 1989. He was called back to Beaulieu for a second interview, at which time he completed a "Health Questionnaire." Question 73 of the questionnaire asked whether the applicant had "ever filed a compensation claim or received benefits as a result of an industrial injury or disease?" Kilgore testified that when he read that question, he told Julie Shiflett, the personnel director at the time, that when he had worked at Shaw Industries he had pulled a groin muscle and had been out of work for two or three days. He said Shiflett asked whether he had filed a workers' compensation claim against the company. He told her that he had not, but that he had received a check from the company. Kilgore testified that Shiflett said, "Well, put down 'no' if you didn't file for any." Question 74 asked whether the applicant had "lost time from work due to illness or injury in the past two years?" Once again, Kilgore checked "no." However, Kilgore said he told Shiflett he had had injuries to his ankle and hand. On Kilgore's application, Shiflett wrote that Kilgore had broken an ankle two years before and that he had had an operation on his hand.
Beaulieu, which manufactures carpet yarn, hired Kilgore, and he began working in May 1989. In September 1990, he injured his arm while on the job, and he did not return to work until February 25, 1991. He received workers' compensation benefits for the time he was out of work. On Kilgore's first day back on the job, he injured his back while repairing machinery. Kilgore testified that on his next shift he notified his supervisor, Lyle Peters, of the injury. As a result of his back injury, Kilgore was again off work from February 25 until July 7, 1991. He received no workers' compensation benefits during that time, although he says he filed a claim for benefits.
While Kilgore was out of work for his back injury, Beaulieu learned that he had been injured when he worked at Shaw Industries. Brenda Weatherby, Beaulieu's personnel administrator in 1991, testified that she contacted Anita Burton at Shaw and asked whether Kilgore had had a workers' compensation injury when he worked there. According to Weatherby's testimony, Burton told her that Kilgore had been out for three days with a groin injury and that he had received some compensation for that injury. Weatherby told Beth Maury, Beaulieu's human resources manager, what she had learned from Burton. Weatherby testified that she believed that Maury then checked Kilgore's health questionnaire and determined that he had not disclosed the injury on the questionnaire or on his application. Maury met with Joel Deason, director of human resources, to discuss what disciplinary action should be taken against Kilgore. Deason testified that Beaulieu's policy was to immediately terminate the employment of anyone who had falsified company documents, if the falsification could be proven. Because of this policy, he said, he would have directed Maury to terminate Deason's employment.
Kilgore testified that when he returned to work on July 7, he was told to report to the personnel office and that when he did he was confronted with the discrepancy between his questionnaire and what Beaulieu had learned *Page 291 
in his absence. Robert Ingram, Beaulieu's director of safety and risk management, testified that in his July 7 meeting with Kilgore, Kilgore admitted that the answers to questions 73 and 74 were false, but said that he had explained to Shiflett what had happened and that she had told him to mark "no" on the form. Ingram said he then telephoned Shiflett and that she told him that she "most certainly" did not tell Kilgore to mark "no" on any question on the questionnaire. At that time, Ingram said, Kilgore was told that his employment had been terminated. Shiflett testified that she did not recall that anyone telephoned her about Kilgore's application. She also testified that she did not specifically remember Kilgore's application process, but that the health questionnaires were completed at the doctor's office and not in the personnel office.
 I.
Beaulieu contends that the trial court erred in denying its motions for directed verdict and its motion for judgment notwithstanding the verdict. To determine whether the trial court correctly denied Beaulieu's motions for directed verdict, this court must decide "whether the party with the burden of proof produced sufficient evidence of a conflict warranting a jury's consideration. The evidence must be viewed in a light most favorable to the nonmoving party." Gresham v. SchlumbergerIndustries, Inc., 656 So.2d 347, 349-50 (Ala. 1995) (citations omitted). "A verdict is properly directed only where there is a complete absence of proof on a material issue or where there are no disputed questions of fact for the jury to determine."K.S. v. Carr, 618 So.2d 707, 713 (Ala. 1993). Furthermore, on review of a directed verdict, no presumption of correctness attaches to the trial court's ruling. Id.
It is well settled in Alabama that an employment contract is generally terminable at will by either party, with or without cause or justification — for a good reason, a wrong reason, or no reason at all. Hoffman-LaRoche, Inc. v. Campbell,512 So.2d 725 (Ala. 1987). However, the legislature has carved out a narrow exception in the case of one whose employment is terminated as a result of the employee's filing of a workers' compensation claim. Section 25-5-11.1, Ala. Code 1975, provides:
 "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of § 25-5-11."
In Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364
(Ala. 1988), our Supreme Court interpreted the statute as it deals with terminating employment for filing workers' compensation claims:
 "We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was 'terminated' because he sought to recover workers' compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the employee must prove that the reason given by the employer was not true but a pretext for an otherwise impermissible termination."
Twilley, 536 So.2d at 1369. The Supreme Court also said inTwilley that, "we do not believe that the legislature intended that an employer is entitled to a directed verdict if the employer presents any evidence that the termination was not because of the employee's instituting or maintaining an action to recover worker's compensation benefits." Twilley, 536 So.2d at 1368.
In Culbreth v. Woodham Plumbing Co., 599 So.2d 1120, 1122
(Ala. 1992), the Supreme Court elaborated on its holding inTwilley, stating:
 "We note that it would be more appropriate to say that, after the defendant has met his burden of coming forward with evidence of a legitimate reason, ' "the plaintiff then has the burden of going forward with rebuttal evidence showing that the defendant's [stated] reasons" ' for terminating the plaintiff are not true. Twilley, 536 So.2d at 1369, quoting Pushkin v. Regents of the University of Colorado, *Page 292 658 F.2d 1372, 1387 (10th Cir. 1981). The plaintiff does not have to 'prove' that the employer's stated reason is not true unless the defendant's evidence is sufficiently certain, without more evidence from the plaintiff, to support a directed verdict. If the plaintiff's prima facie case is strong, and the defendant's evidence of an asserted reason is weak or equivocal, the jury might simply disbelieve the defendant."
Subsequent cases have held that an employee establishes a prima facie case in a retaliatory discharge case by proving that the employee filed a workers' compensation claim for a work-related injury, that the injury prevented the employee from working for a period of time, and that upon returning to work, the employee was informed that he or she no longer had a job. See Allen v.Albrecht Enterprises, Inc., 675 So.2d 425 (Ala.Civ.App. 1995), cert. denied, 675 So.2d 428 (Ala. 1996); Rickard v. ShoalsDistributing Inc., 645 So.2d 1378 (Ala. 1994); Overton v. AmerexCorp., 642 So.2d 450 (Ala. 1994); Graham v. Shoals Distributing,Inc., 630 So.2d 417 (Ala. 1993).
Kilgore presented evidence that he had filed a workers' compensation claim, that he was out of work for a period of time, and that when he returned to work, he was told to report to the personnel office. There Kilgore met with personnel officials, and, after responding to their questions, was informed that his employment with Beaulieu was terminated. Kilgore, therefore, presented a prima facie case of retaliatory discharge.
The burden then shifted to Beaulieu, which presented evidence that Kilgore was fired for falsifying company documents. Specifically, Beaulieu said, Kilgore was fired because the company learned that he had given false answers to two questions on his health questionnaire. Because falsification of company documents is a legitimate reason for terminating employment at Beaulieu, the burden shifted back to Kilgore to present sufficient rebuttal evidence to show that Beaulieu's stated reason for firing him was a pretext. Culbreth, 599 So.2d at 1122.
Kilgore's evidence included testimony that Maury, who was involved in the decision to terminate Kilgore's employment, had been aware of his workers' compensation claim for his injuries at Beaulieu. Kilgore testified that when he was filling out his health questionnaire, he informed Shiflett of his groin injury and told her that he had missed two or three days of work because of that injury. A notation on his application, which is in Shiflett's handwriting, reflects that Kilgore had broken an ankle two years before applying for a job at Beaulieu and that he had had an operation on his hand. Kilgore also testified that he thought Beaulieu's question about "filing a workers' compensation claim" was asking whether he had filed a lawsuit, and that he had not filed a lawsuit to recover benefits from Shaw for his groin injury. Shiflett and Weatherby testified that the health questionnaire was intended to help the doctor evaluate job candidates' fitness and was not relied upon by the personnel office in making hiring decisions.
The question whether an employee is terminated "solely" because he filed a workers' compensation claim is a question for the jury. Chesser v. Mid-South Electrics, Inc.,652 So.2d 240 (Ala. 1994). Admittedly, this is a close case. However, after reviewing the record, we hold that there was sufficient evidence from which a jury could determine that Kilgore actually had informed Shiflett of the injury to his groin and had responded to the question as she instructed him. The jury also could have determined that, even though Kilgore had not truthfully answered the two questions on the questionnaire, given the circumstances surrounding his answers, as described by Kilgore, his transgression was so small that it did not merit his firing; therefore, it could have determined that Beaulieu's stated reason for firing Kilgore, i.e., that he falsified company documents by giving false answers to two questions on his health questionnaire, was a pretext and not a legitimate reason. Therefore, the trial court correctly denied Beaulieu's motions for directed verdict and its motion for a judgment notwithstanding the verdict.
 II.
Beaulieu also contends that the trial court erred in its rulings on several evidentiary issues that arose during the trial. *Page 293 
 "The trial court is vested with broad discretion in determining whether to admit or exclude evidence. Attalla Golf Country Club, Inc. v. Harris, 601 So.2d 965, 969 (Ala. 1992); Ryan v. Acuff, 435 So.2d 1244, 1247 (Ala. 1983). The trial court's ruling on the admissibility of evidence will not be disturbed on appeal absent a clear abuse of discretion. Cone Builders, Inc. v. Kulesus, 585 So.2d 1284, 1288 (Ala. 1991)."
Miller v. Pettibone Corp., [Ms. 2940796, January 5, 1996] ___ So.2d ___ at ___ (Ala.Civ.App. 1996).
Beaulieu argues that the trial court erred in precluding cross-examination of Kilgore and other proof that Kilgore drank more alcoholic beverages than he admitted on the health questionnaire. That evidence, Beaulieu says, is probative of whether Kilgore answered questions falsely if he thought the true answers would hurt his chances of getting a job with the company, and to show that he answered questions falsely without discussing them with Shiflett.
The record shows that on the health questionnaire Kilgore marked that he "occasionally" drank alcoholic beverages. In a health history Kilgore gave in 1991, he said he drank a case of beer a week. Beaulieu's argument seems to be that because Kilgore did not mark that he drank "frequently," he lied about how much he drank. The trial court did not allow that evidence, pointing out the difficulty of determining what constitutes "occasionally" and "frequently." From some people's point of view, drinking a case of beer on weekends but abstaining from alcohol during the work week could be considered drinking "occasionally." That Kilgore marked that he "occasionally" drank alcoholic beverages, although he drinks a case of beer a week, does not prove that he answered the question falsely. The prejudice created by evidence of Kilgore's drinking habits might outweigh its probative value in this case, therefore, we cannot say that the trial court abused its discretion in precluding that evidence. See Gober v. Khalaf, 628 So.2d 416
(Ala. 1993).
Beaulieu also contends that the trial court erred in precluding evidence that Kilgore had allegedly committed offenses that he knew violated company rules and that could result in his termination, including recording more hours on his time card than he had worked, drinking on the job, and arriving at work under the influence of drugs. This evidence was admissible, Beaulieu argues, under the curative admissibility rule to rebut the assertions Kilgore made on direct examination that he "always followed all of the rules and regulations there at Beaulieu" and that he had given the company "a good, honest effort."
As stated above, the trial court has broad discretion in determining whether to exclude evidence, and its ruling will not be disturbed on appeal absent a clear abuse of discretion.Miller v. Pettibone Corp., ___ So.2d at ___. Beaulieu wanted to cross-examine Kilgore about whether Kilgore had told his ex-wife about falsifying time cards, drinking beer on company time, and going to work under the influence of cocaine. If Kilgore denied those allegations, Beaulieu said it would then make an offer of proof that the ex-wife, whom the trial court did not want called to testify, would say that Kilgore had told her of committing those acts.
The record shows that Kilgore and his ex-wife have a far-from-amicable relationship. In August 1991, shortly after Kilgore's employment was terminated, an altercation arose between the two, and Kilgore's ex-wife shot him. As a result of the incident, Kilgore was charged with sexual assault and, apparently, the ex-wife was charged with attempted murder. Given that the ex-wife was the source of information about Kilgore's alleged violations of Beaulieu's regulations, and given the state of her relationship with Kilgore, we are wary of the evidence Beaulieu wanted to use to prove that Kilgore was not telling the truth as to his compliance with company rules. Nothing in the record indicates that there is any evidence to corroborate the ex-wife's allegations. While specific acts of misconduct may be admissible to rebut what a witness said on direct examination, see United States v. Chu,5 F.3d 1244 (9th Cir. 1993), cert denied, ___ U.S. ___,114 S.Ct. 1549, 128 L.Ed.2d 198 (1994); Rule 608(b), Ala. *Page 294 
R.Evid.; C. Gamble, Gamble's Alabama Rules of Evidence § 608(b) (1995), we do not believe the evidence Beaulieu sought to have admitted to rebut Kilgore's testimony is sufficiently reliable. The trial court can, in its discretion, exclude relevant evidence if its probative value is substantially outweighed by its prejudicial impact. Rule 403, Ala.R.Evid.; see also, Ott v.Smith, 413 So.2d 1129 (Ala. 1982). Therefore, we hold that the trial court did not abuse its discretion in excluding that testimony.
Beaulieu also argues that, for the purpose of limiting Kilgore's claim for lost wages, the company should have been allowed to cross-examine Kilgore and to offer testimony from his ex-wife regarding her allegation that Kilgore had said he padded his time cards. Beaulieu contends that that evidence would be relevant to show that Kilgore's wages were not as high as he claimed, and that the jury could take that fact into account when determining damages. For the same reason as discussed above, we hold that the evidence Beaulieu sought to use to prove that Kilgore had padded his time card is questionable and that its prejudicial impact would substantially outweigh its probative value. Therefore, the trial court did not abuse its discretion in excluding that evidence.
Beaulieu next contends that the trial court erred in allowing Kilgore to offer evidence of Beaulieu's business practices in processing applications in 1991 to permit an inference that those practices were the same in 1989, when Kilgore went through the process. Testimony regarding the 1991 application process was elicited through Brenda Weatherby, the company's personnel administrator. Weatherby testified that she did not begin working at Beaulieu until 1991 and that she had no knowledge of the application process used when Kilgore was hired in 1989.
Rule 45, Ala.R.App.P., reads in pertinent part:
 "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of . . . the improper admission or rejection of evidence . . . unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
See also, Rule 61, Ala.R.Civ.P. Weatherby made it clear that she was not aware of what application process Kilgore may have gone through when he was hired. Kilgore and Shiflett each testified as to what they recalled of Kilgore's application process. After reviewing the record, we cannot say that the error complained of probably injured Beaulieu. Therefore, even if the trial court erred in allowing Weatherby to explain what the application procedure was in 1991, the error was harmless.
Beaulieu also contends that the trial court erred in precluding Beaulieu from offering evidence that the company claims could establish that Kilgore's ability to recover lost wages would have been cut off about one month after his employment was terminated because he would have been fired then for a separate, legitimate reason. Specifically, Beaulieu argues, the trial court erred in precluding evidence that Kilgore's ex-wife shot him on August 18, 1991, and that he had a recuperation period of two and one-half months. Because of his prior excessive absences from work, the company says, had Kilgore still been working for Beaulieu, his absence from work as a result of the shooting would have resulted in his being fired. To prove that contention, Beaulieu said, it would offer the testimony of Joel Deason, Beaulieu's personnel director.
Beaulieu argues that the evidence that Kilgore was shot and would have missed more than two months of work was admissible to cut off Kilgore's ability to recover lost wages. The company cites McKennon v. Nashville Banner Publishing Co., ___ U.S. ___, ____ _ ___, 115 S.Ct. 879, 886-87, 130 L.Ed.2d 852 (1995), in support of this proposition. In McKennon, the United States Supreme Court dealt with the issue whether an employee discharged in violation of the Age Discrimination Act of 1967 is barred from all relief if, after the employee's discharge, his or her employer discovers evidence of wrongdoing that would have resulted in the employee's *Page 295 
termination on legitimate grounds. The Supreme Court held that because the reason for the Act was not only to compensate the employee for wrongful termination but also to deter companies from discriminating, after-acquired evidence could not serve as an absolute bar to relief. That evidence could be used to preclude remedies of reinstatement and front pay, not back pay as Beaulieu argues. The evidence also could be considered in calculating the amount of back pay to be awarded the employee. ___ U.S. at ___, 115 S.Ct. at 886. Before an employer can rely on after-acquired evidence to limit damages, "it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." ___ U.S. at ___ _ ___, 115 S.Ct. at 886-87.
Kilgore stipulated that he would not be entitled to recover lost wages for the two-and-one-half months he was recuperating from the shooting. According to the record, counsel for Beaulieu made the following offer of proof as to what Deason's testimony would be regarding whether Kilgore would have been fired after the shooting:
 "I think the employee handbook also speak[s] to the underlying circumstances for the absenteeism will be evaluated [sic]. And so I think in all honesty to the court, if Mr. Deason took the stand, he would not say that ipso facto necessarily because he had been shot and had missed two and one-half months he would have been fired. He would say that depending on the underlying circumstances, he would have been. These underlying circumstance[s] as exist in this case would have resulted in that; which I acknowledge makes the issue more difficult for the court because that then gets into the details of what happened between him and his wife, but that would be what Mr. Deason's testimony would be, I believe."
The evidence in the record before us does not establish that Kilgore would have been fired for being absent from work after being shot. As Beaulieu's counsel pointed out, the underlying circumstances would have to be considered. Although we know that both Kilgore and his ex-wife face criminal charges, we do not know the details of what happened between them, and we do not know that Beaulieu would have fired Kilgore based solely on the information we do have. Therefore, we cannot say that the trial court abused its discretion in precluding evidence of Kilgore's shooting.
Beaulieu also argues that the trial court erred in precluding the company from admitting evidence on the state of mind of Beaulieu personnel at the time they made the decision to inquire of Kilgore's previous employer, Shaw Industries, about whether he had had a work-related injury while employed there. Specifically, Beaulieu argues that Brenda Weatherby should have been able to testify as to what another Beaulieu employee, Willie Ponders, told her about Kilgore and why that information played a role in the company's decision to contact Shaw Industries. Beaulieu argued that the evidence was admissible to show the company's state of mind when it inquired of Shaw Industries about Kilgore.
The record shows that Beaulieu called Ponders as a witness. Ponders testified that he told Weatherby and Brenda Maury that he had been in a bar and had heard Kilgore talking about what he was going to buy when he "came into a bunch of money" and that Kilgore said he was going to own Beaulieu "when its over with." Because Ponders testified as to what he told Weatherby about Kilgore, if there was any error in preventing Weatherby from testifying about the same conversation, the error was harmless. Rule 45, Ala.R.App.P., and Rule 61, Ala.R.Civ.P.
 III.
Beaulieu argues that some of the jury charges given by the trial court were misstatements of the law, and that, therefore, it is entitled to a new trial. Beaulieu also assigns error to the trial court's refusal to give two of its requested jury instructions.
To determine the validity of any part of the jury instructions given, we are to examine the jury charge as a whole. Angus *Page 296 v. Liberty Nat'l Life Ins. Co., 457 So.2d 971, 973 (Ala. 1984).
The portions of the jury instruction that Beaulieu claims were erroneous are as follows:
 "The court charges the jury that an employee may establish a prima facie case of retaliatory discharge by proving that he filed a workman's compensation claim for a work-related injury, that the injury prevented him from working for a period of time, and that when he returned to work he was informed that he no longer had a job. The burden would then shift to the defendant-employer . . . to come forward with evidence that the employee was terminated for a legitimate reason. The employee in this case . . . must again offer some rebuttal evidence showing that the defendant's stated reasons for terminating him are not true but a mere pretext or an otherwise impermissible termination."
Beaulieu argues that the first portion of the instruction was a misstatement of the law regarding the proof required to establish a prima facie case. However, the statement of the law contained in the jury instruction comports with the holding inRickard v. Shoals Distributing, Inc., 645 So.2d 1378, 1382
(Ala. 1994), in which our Supreme Court stated that those exact factors, i.e., that the plaintiff filed a workers' compensation claim, was away from work for a period of time, and was informed when he returned to work that he no longer had a job, were sufficient to establish the plaintiff's prima facie case.See, also, Graham v. Shoals Distributing, Inc., 630 So.2d 417
(Ala. 1993); Culbreth v. Woodham Plumbing Co., 599 So.2d 1120
(Ala. 1992). Kilgore correctly notes that, in the prima facie stage of a retaliatory discharge case, a plaintiff need not "prove" that his employment was terminated for seeking workers' compensation benefits. If this were true, there would be no need to shift the burden. The prima facie level of the analysis is an initial inquiry that allows a court to determine whether there may be a valid claim and whether the case should proceed.
Beaulieu supports its assertion by reference to Hayden v.Bruno's, Inc., 588 So.2d 874 (Ala. 1991), and Beaulieu ofAmerica, Inc. v. Dunn, 658 So.2d 454 (Ala.Civ.App. 1994). In those decisions, the appellate courts stated that the plaintiffs did not make out a prima facie case merely by showing that their employment was terminated after filing workers' compensation claims. Those cases are distinguishable because, in both, the court found that the plaintiffs had presented no evidence indicating that their employment termination was a result of their filing workers' compensation claims, but rather asked the courts to assume that the discharge was retaliatory. Furthermore, the opinions did not state that the employees had failed to establish a prima facie case, but rather that "even if [they] proved a prima facie case, there is no evidence that the reasons [the employers] gave for terminating [their employment] were a pretext."Hayden, supra, at 876; Dunn, supra, at 460. Therefore, the holdings of the cited opinions do not appear to hinge on whether there was enough evidence of retaliatory discharge to meet the prima facie burden.
Beaulieu argues that the portion of the jury instruction regarding the plaintiff's final burden is erroneous because, it says, the plaintiff properly is required to produce more than "some rebuttal evidence," and is required to carry the ultimate burden of persuasion. We fail to see how the instruction misstates the rule that "the plaintiff then has the burden of going forward with rebuttal evidence showing that the defendant's reasons" for terminating the plaintiff's employment are not true. Dunn, supra, at 456 (citation omitted). Furthermore, another portion of the jury instruction stated that "for the plaintiff to recover, the burden is upon the plaintiff to prove to your reasonable satisfaction by a preponderance of the evidence that he was terminated solely because he sought to recover workmen's compensation benefits." Thus, the trial court's instruction, examined as a whole, made it clear that the plaintiff bore the burden of persuasion. A review of the jury instruction shows no reversible error.
Beaulieu additionally argues that the trial court erroneously instructed the jury *Page 297 
regarding the requisite intent for a finding that Kilgore's discharge was retaliatory. An excerpt of the instruction is as follows:
 "In response to [Beaulieu's assertion that Kilgore was terminated for violating company policy], the plaintiff denies that he deliberately or intentionally made any misrepresentation and he says that the company representative told him to make the entries on the health forms that are now complained of by the company. . . ."
Beaulieu alleges that, by giving the above instruction, the trial court misdirected the jury to determine whether Kilgore had intentionally falsified information on his employment application rather than to determine Beaulieu's retaliatory intent, or lack thereof.
The next portion of the jury instruction reads:
 "[I]n order for the plaintiff to recover, the burden is upon the plaintiff to prove to your reasonable satisfaction by a preponderance of the evidence that he was terminated solely because he sought to recover workmen's compensation benefits. The evidence presented in this light must be substantial in nature. . . .
Once again, a complete reading of the instruction leads us to conclude that the instruction adequately emphasized that the burden was upon the plaintiff to prove retaliatory intent. We conclude that any portion of the instruction that could have been incorrect or misleading was rendered harmless by the instruction as a whole. Angus v. Liberty Nat'l Life Ins. Co.,457 So.2d 971 (Ala. 1984).
Beaulieu claims that the trial court also improperly refused to give two instructions requested by Beaulieu that focused on the state of mind of the person who decided to terminate Kilgore's employment and whether that person had retaliatory intent. The trial court's refusal of a written requested instruction is not a cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge. Rule 51, Ala.R.Civ.P.; see also Union Security Life Insurance Co. v. Crocker,667 So.2d 688 (Ala. 1995). As set out above, the trial court correctly and fully charged the jury regarding proof of retaliatory intent. Therefore, the trial court did not err in refusing to give Beaulieu's requested jury charges.
For the reasons set out above, the judgment of the trial court is affirmed.
AFFIRMED.
THIGPEN, J., concurs.