ROBERTSON, Presiding Judge.
In 1989, Business Realty Investment Company, Inc. (“BRIC”), and its president, Rick Bentley, entered into an agreement with the City of Birmingham (“the City”) providing that the City would loan BRIC $320,000 to develop a Birmingham subdivision (“Westhaven”). The City secured the loan by a mortgage on the West-haven property. On November 12, 1997, Bentley and BRIC sued the City, seeking a temporary restraining order to prevent the City from foreclosing on the Westha-ven property. The trial court denied the request for the restraining order and the City held a foreclosure sale on November 19, 1997, wherein it purchased the Westha-ven property for less than the outstanding balance of the loan. On January 7, 1998, BRIC and Bentley amended their complaint to state claims against the City al *525 leging breach of contract,[1] breach of the implied covenant of good faith and fair dealing, and wrongful foreclosure. The City counterclaimed, alleging breach of contract and fraud; it sought to recover the amount of the loan and damages based on fraud allegedly committed by BRIC and Bentley.
The case was tried before a jury on September 14, 1998. At the close of all the evidence, the trial court dismissed Bentley’s individual claims and BRIC’s claim of breach of the implied covenant of good faith and fair dealing. The City dismissed its counterclaim alleging fraud. The case was tried on BRIC’s claims alleging wrongful foreclosure and breach of contract and on the City’s counterclaim alleging breach of contract. The jury returned its verdict on September 17, 1998, finding in favor of the City on BRIC’s claims and finding in favor of BRIC on the City’s counterclaim. The trial court entered a judgment on September 18, 1998, in accord with the verdict. Neither party filed any post-judgment motions.
On October 21, 1998, BRIC gave notice to the City that it was exercising its statutory right to redeem the Westhaven property pursuant to § 6-5-252, Ala.Code 1975. October 28, 1998, the City filed a motion for relief from the judgment, pursuant to Rule 60(b)(5) and (6), Ala.R.Civ.P., seeking to set aside the judgment entered on the jury’s verdict on the ground that the judgment was unjust in light of BRIC’s intent to redeem the property. On November 19, 1998, the trial court denied the City’s Rule 60(b) motion.
BRIC appealed to the Supreme Court of Alabama, and the City cross-appealed; that court transferred the appeals to this court, pursuant to § 12-2-7, Ala.Code 1975.
The record reveals that BRIC is a general contractor that engages in public and private real-estate development and construction. During 1988, BRIC planned to develop approximately 91 acres in southwestern Birmingham as the Westhaven subdivision; the subdivision was planned to provide 270 low-to-moderate-priced single-family residences. BRIC presented its Westhaven subdivision plan to the City and received general approval from the mayor and various City officials. On November 28, 1989, BRIC and the City entered into a loan agreement (“the original loan agreement”) under which the City agreed to lend BRIC $320,000 in federal Urban Development Action Grant (“UDAG”) funds. The original loan agreement required BRIC to repay the City at an annual interest rate of 3% in 30 monthly installments of $11,084.99, with the first payment deferred for six months. The proceeds of the original loan were applied toward the $350,000 cost of purchasing the Westhaven property, and BRIC secured the loan by giving the City a mortgage on the property.
When the first payment became due in May 1990, BRIC informed the City that it was experiencing financial difficulty and would be unable to make the payment. BRIC attributed its financial difficulty to the City’s failure to make progress payments as required under other construction contracts BRIC had with the City. On July 17, 1990, the parties executed a first amendment to the original loan agreement (“the first amendment”), agreeing, among other things, to defer the monthly payments for three months, until August 28, 1990. BRIC continued to have financial difficulties, and during September 1991 the parties agreed to a second amendment to the original loan agreement (“the second amendment”), under which BRIC’s obligation to make monthly installments would again be deferred. As with the first amendment, the second amendment included language stating that the parties’ obligations under the mortgage would re *526 main in effect, but added new time contingencies.
According to BRIC, its financial problems continued because of the City’s failure to make required progress payments required under the parties’ other contracts, and in 1992 BRIC sued the City, alleging breach of contract and intentional interference with BRIC’s business relations with its bonding company.[2] In February 1994, the parties entered into a third amendment to the original loan agreement (“the loan-repayment agreement”), which provided detailed guidelines for BRIC’s repayment of the debt on the Westhaven property. Under the loan-repayment agreement, the City was to purchase the first seven lots in Westhaven at a cost of $5,000 per lot; $4,000 from each lot sale was to be applied to the Westhaven debt and the remaining $1,000 was to be used to repay Internal Revenue Service (“IRS”) tax liens that had been placed on the property. The loan-repayment agreement further provided that BRIC would pay $2,000 to the City and $3,000 to the IRS from the sale of each of the next 17 lots in Westha-ven. Thereafter, BRIC was to pay to the City $2,500 from the sale of each additional lot until the Westhaven debt was fully paid. The City never purchased any lots under the loan-repayment agreement. The City claimed that it was unable to purchase the lots because the lots were selling for more than the parties had anticipated and BRIC would not sell the lots for less than $11,000.
The Westhaven loan was placed on the City’s list of delinquent loans. In 1997, after BRIC’s 1992 lawsuit against the City was concluded, BRIC made a proposal to the City that envisioned a third party’s repaying the Westhaven loan and accrued interest. The City rejected the proposal. On September 25, 1997, the City declared BRIC in default and made a demand for payment of the Westhaven loan and all associated interest, taxes, and costs. „ On November 19, 1997, the City foreclosed on its mortgage and purchased the property for $163,874. The City also asserted a deficiency against BRIC in the amount of $148,987.

I. BRIC’s Appeal

BRIC argues that the judgment of the trial court must be reversed because, it says, (1) the trial court erred in refusing to require the attendance of Garry Miller, an employee of the City’s engineering department, at the trial; (2) the trial court erred in refusing to admit Garry Miller’s testimony as given in BRIC’s 1992 lawsuit against the City; and (3) the trial court erred in rejecting BRIC’s proposed jury charges.
With respect to its first argument, BRIC contends that the trial court committed reversible error by refusing to continue the trial until Miller could be located, served with a subpoena, and brought to trial. The record reveals that approximately one week before the trial, BRIC’s process server went to the Birmingham City Hall to serve a subpoena upon Miller. When the process server arrived at Miller’s office, she was prevented from entering by Miller’s secretary, who stated that Miller was in his office but was on the telephone. The process server later served the subpoena on Mike Melton, the assistant city attorney. At the start of the trial, the City informed BRIC that Miller had never received the subpoena and that he was on vacation for the week and would not be available to testify. When BRIC called Miller as a witness on the second day of trial, the court refused to stop the trial or to issue any order compelling Miller’s attendance.
Rule 45(b)(1), Ala.R.Civ.P., defines what constitutes proper service of subpoenas in civil lawsuits. In this case, the subpoena *527 for Miller was not served on him personally, nor was it left at Miller’s abode with a “person of suitable age and discretion residing therein,” as required by Rule 45. Thus, we conclude that BRIC’s subpoena was not properly served on Miller. Proper service of a subpoena is a prerequisite for application of the contempt sanctions of Rule 45(e) or for attachment under § 12-21-182, Ala.Code 1975.
We note further that even had service upon Miller been proper, enforcement of the subpoena was within the trial court’s discretion. Ex parte Palmer, 556 So.2d 390 (Ala.Civ.App.1989); Clark v. State ex rel. Williams, 527 So.2d 1306 (Ala.Civ.App.1988). In Clark, this court held that the trial court’s refusal to stop a trial and issue an attachment was not an abuse of discretion where the trial court had been informed, after the trial had begun, of the witness’s failure to respond to a properly served subpoena. Under the circumstances of this case, we conclude that the trial court did not abuse its discretion in refusing to stop the trial or to issue an order of attachment to compel Miller’s appearance.
To the extent that BRIC’s argument can be characterized as a contention that the trial court erred to reversal by failing to grant a continuance to allow BRIC to properly serve its subpoena, we note that the settled rule is that “ ‘[cjontin-uances are not favored and ... a trial court’s denial of a motion for continuance will be upset only when a palpable or gross abuse of discretion has been shown.’ Johnson Publishing Co. v. Davis, 271 Ala. 474, 496, 124 So.2d 441, 459 (1960).” Scullin v. Cameron, 518 So.2d 695, 698 (Ala.1987). In this case, where the subpoena had not been properly served and there was no showing by BRIC that it had attempted to correct the service or otherwise ensure Miller’s presence, until the trial had begun, the trial court did not abuse its discretion.
In its second argument, BRIC contends that the trial court committed reversible error by refusing to admit portions of Miller’s testimony that were given in the trial of the 1992 lawsuit by BRIC against the City. BRIC argues that Miller’s testimony would show that persons working in the City’s engineering department actively disliked BRIC. BRIC claims that Miller’s testimony in this regard was important to show the jury that the City’s engineering department had fabricated a plan to falsely claim that sawdust was present on lots at Westhaven so as to justify the City’s refusal to purchase lots under the loan-repayment agreement. The actual evidence submitted by BRIC was that Miller used the term “S.O.B.” when referring to BRIC in the context of its actions in the development contracts that were the subject of the 1992 lawsuit.
When BRIC proffered this testimony, the trial court refused to allow it, noting that “the prejudicial value of the statement outweighs the probative value.” Rule 403, Ala.R.Evid., provides that the trial court may exclude evidence “if its probative value is substantially outweighed by the danger of unfair prejudice.” The law is settled that the determination of whether evidence is to be excluded is left to the trial court’s discretion. As noted in the advisory committee’s notes to Rule 403:
“Issues arising under Rule 403 are those about which much discretion continues to be vested in the trial judge. Ott v. Smith, 413 So.2d 1129 (Ala.1982) (recognizing that such a decision is largely within the trial court’s discretion). See W. Schroeder, J. Hoffman, & R. Thigpen, Alabama Evidence § 4-3 (1987). As with issues of relevancy, the exercise of this discretion will not be reversed on appeal, unless the discretion has been abused. AmSouth Bank, N.A. v. Spigener, 505 So.2d 1030 (Ala.1986) (holding that questions of materiality, relevancy, and remoteness rest largely with the trial judge and that rulings *528 thereon will not be disturbed unless the judge’s discretion has been abused).”
Rule 403, Ala.R.Evid., Advisory Committee’s Notes. See also Beaulieu of America, Inc. v. Kilgore, 680 So.2d 288 (Ala.Civ.App.1996).
After examining the record, we note that Miller’s testimony did tend to show that he disliked BRIC, at least in the context of a contract unrelated to the Westhaven development. However, despite its inflammatory nature, Miller’s testimony does not tend to prove whether he or the City intended to act in bad faith against BRIC or to promote a wrongful foreclosure. We therefore conclude that the trial court did not abuse its discretion in denying the admission of Miller’s earlier testimony. Rule 403; Beaulieu, supra.
BRIC’s third argument is that the trial court erred in refusing to give particular jury charges at the close of the case. BRIC objected to the trial court’s refusal to give its requested charges 9, 12, 14, 16, 17, 18, 19, 24, and 25. In general, these charges instruct the jury as to basic contract and mortgage law. BRIC contends that these charges were essential to its claims of wrongful foreclosure and breach of the loan agreement by the City. The trial court fully charged the jury on the legal requirements of breach of contract and wrongful foreclosure; this court would therefore conclude that the trial court did not err, after making an analysis of the legal sufficiency of the trial court’s charge in light of each of the refused instructions proposed by BRIC. However, we need not engage in a lengthy analysis of BRIC’s arguments with respect to each of its instructions that the trial court refused.
The law is settled that in order to preserve its arguments on appeal with respect to the trial court’s refusal to give its requested charges, BRIC was required to state its reasons for its objections. Rule 51, Ala.R.Civ.P., provides, in pertinent part:
“No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless that party objects thereto before the jury retires to consider its verdict, stating the matter objected to and the grounds of the objection.”
(Emphasis added.) Moreover, Alabama caselaw is equally settled that a stated basis for the objection to a trial court’s failure to give a charge is essential to appellate review of the issue. “[N]ot only must an objection to the trial court’s refusal to give an instruction be made, but the objection must be made specifically and must be supported by grounds in order for review to be had in the appellate court.” Burnett v. Martin, 405 So.2d 23, 28 (Ala.1981) (citation omitted). See also Coleman v. Taber, 572 So.2d 399 (Ala.1990); Norman Properties v. Bozeman, 557 So.2d 1265 (Ala.1990); Clements v. Colonial Baking Co., 547 So.2d 858 (Ala.1989).
The record is plain that BRIC gave no basis for its objections to the trial court’s refusal to give its charges. Accordingly, its arguments in this respect are not preserved for this court’s review. We conclude that the judgment entered on the jury’s verdict with respect to BRIC’s claims is due to be affirmed.

II. The City’s Appeal

In its cross appeal, the City argues that the trial court erred (1) in denying the City’s Rule 60(b) motion because, it says, the provisions of the judgment holding for BRIC on the City’s counterclaim and against BRIC on its claims alleging breach of contract and wrongful foreclosure were inconsistent, and (2) in denying the City’s Rule 60(b) motion because, it says, the verdict was against the great weight of the evidence.
The City’s motion for relief from the judgment was filed pursuant to Rule 60(b)(5) and (6). The motion admits that the City did not seek post-judgment relief because the City viewed the verdict as a *529 “wash.” The Rule 60(b) motion was filed only when BRIC sought to exercise its right to redeem the foreclosed Westhaven property under § 6-5-252, AIa.Code 1975. At that time, the City apparently realized that BRIC might be able to redeem the Westhaven property so that the total of its payments would be less than the outstanding loan balance. The parties indicate in their briefs that a hearing was held on the City’s Rule 60(b) motion, but the record does not contain a transcript of the hearing.
Sections (5) and (6) of Rule 60(b), Ala. R.Civ.P., provide that the court may relieve a party from a judgment when:
“(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment [is presented].”
The law is settled that our standard of review of the trial court’s denial of relief under Rule 60(b) is whether the trial court abused its discretion. Woodward v. State ex rel. Woodward, 664 So.2d 211 (Ala.Civ.App.1994). That is, our review does not consider the correctness of the underlying judgment, but only whether in denying the motion the trial court abused its discretion. Ex parte Morton, 403 So.2d 235 (Ala.1981). In determining whether the trial court has abused its discretion, this court looks to the grounds presented in the motion as well as the matters presented in the trial court in support of the motion. Boles v. Hooper & McDonald, Inc., 424 So.2d 634 (Ala.Civ.App.1982). Moreover, this court has held that in the absence of a transcript of a hearing on a Rule 60(b) motion, this court must conclusively presume that the trial court had evidence before it to support its findings. Heflin v. State, 689 So.2d 163 (Ala.Civ.App.1996). See also Lang v. City Bank, 456 So.2d 820 (Ala.Civ.App.1984) (the trial court’s denial of Rule 60(b) relief was affirmed because the absence of a transcript of a Rule 60(b) hearing left the appellate court with no basis to review the trial court’s discretionary decision).
In this case, both of the City’s contentions under its Rule 60(b) motion go to the correctness of the underlying judgment. In its argument to this court, the City restates the allegations of its Rule 60(b) motion and basically argues that the effect of the judgment is to allow BRIC a windfall of approximately $150,000 because the judgment relieves BRIC of its obligations under the contract. In support of this general argument on the equities, the City first argues that the verdict is inconsistent, apparently invoking the language of Rule 60(b)(5) that it is not equitable that the judgment have prospective application.
It is noteworthy that the only case cited by the City for Rule 60(b) relief on this point is Greenberg v. Alabama State Tenure Commission, 395 So.2d 1003 (Ala.Civ.App.1981). Greenberg is neither factually nor legally applicable to the instant case, nor does there appear to be any Alabama authority supporting Rule 60(b) relief under such circumstances.
The City’s argument that the verdict is inconsistent is based on the assertion that the Westhaven financing agreement is a simple mortgage-and-loan transaction, so that the verdict finding that BRIC did not breach its contract, and that the City did not wrongfully foreclose, must be inconsistent. This argument is undermined by the complexity of the contracts and agreements in this case. The record in this case shows evidence to support the conclusion that BRIC’s obligations under the various repayment agreements became distinct from its security obligations under the mortgage. Thus, the jury could have concluded that BRIC did breach its obligations under an agreement subject to the mortgage, thereby providing the City with the basis for a valid foreclosure, but that BRIC later agreed to new repayment obli *530 gations in the loan-repayment agreement, which obligations it did not breach. In the absence of the transcript of the hearing on the Rule 60(b) motion, we cannot conclude that the City’s argument that the verdict was inconsistent rendered the judgment so inequitable that the trial court abused its discretion in denying Rule 60(b) relief. Morton, Lang, supra.
The City also argues that it is entitled to relief under Rule 60(b)(6), the “catch-all” provision of Rule 60(b). In order to obtain relief under this section, a movant must show “extraordinary circumstances” that are not encompassed by sections (1) through (5) of Rule 60(b). R.E. Grills, Inc. v. Davison, 641 So.2d 225 (Ala.1994); Godard ex rel. Godard v. AT & T Credit Corp., 690 So.2d 383 (Ala.Civ.App.1996). In Godard, this court held that neglect in the movant’s legal office that led to entry of a default judgment did not constitute such an “extraordinary circumstance” as to warrant relief from the judgment under Rule 60(b)(6). The record in this case shows nothing to excuse the City’s failure to seek proper post-judgment relief from the judgment based upon the verdict that it now claims is so inequitable. The City’s legal representatives are certainly charged with notice of BRIC’s right to redeem the Westhaven property under § 6-5-252. Further, this court finds no basis in the record for concluding that the jury’s verdict somehow invalidated BRIC’s obligations to repay the loan under the latest loan-repayment agreement. Thus, the trial court did not abuse its discretion in denying relief under Rule 60(b)(6).
Finally, the City argues that it is entitled to Rule 60(b)(5) or (6) relief because, it says, the verdict was not supported by the evidence. The City failed to move for a judgment as a matter of law at the close of BRIC’s case or at the close of all the evidence. The City also failed to seek any post-judgment relief. It is settled that Rule 60(b) is not a substitute for appeal, and motions under Rule 60(b)rare not appropriate for testing the sufficiency of the evidence. Menefee v. Veal, 484 So.2d 437 (Ala.1986); In re K.N.D., 638 So.2d 904 (Ala.Civ.App.1994); Hilbish v. Hilbish, 415 So.2d 1114 (Ala.Civ.App.1982). Accordingly, the trial court did not abuse its discretion in denying the City’s Rule 60(b) motion for relief from the judgment, and the judgment entered on the jury’s verdict is due to be, and it is hereby, affirmed.
AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, 33., concur.

. As discussed in more detail infra, the "contract” in this case is comprised of a number of agreements and additions to the terms of the original financing agreement that the parties contrived as their business relationship evolved.

. BRIC’s claims in that separate action were tried before a juiy in May 1997; the jury found for BRIC and awarded BRIC damages in the amount of $350,000; the judgment entered on that verdict was eventually affirmed on appeal. See City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747 (Ala.1998).